Mary ANDERSON, Boeing Company
Employee Retirement Plan and
Gregg N. Wicks, Plaintiffs,

v.

Clifford Warren MARSHALL, Defendant.

Civ. A. No. 93–1258–MLB.

United States District Court,
D. Kansas.

June 2, 1994.

Stephen M. Kerwick, Foulston & Siefkin, Wichita, KS, for plaintiffs.

John B. Gilliam, Klenda, Mitchell, Austerman & Zuercher, Wichita, KS, for defendant.

### *MEMORANDUM AND ORDER*

BELOT, District Judge.

This case comes before the court on the defendant's motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(1) and (6). (Doc. 3).

Plaintiffs filed this lawsuit to enjoin defendant from proceeding with state court contempt proceedings against them. Plaintiffs also seek declaratory relief in the form of an order that the state court domestic orders in Case No. 89–D–102 in Sedgwick County do not qualify as Qualified Domestic Relations

Orders (QDRO),[1] and that the Plan Administrator did not act in an arbitrary and capricious manner in refusing to remove defendant's former wife, Opal Marie Marshall, as the beneficiary of defendant's interest in his retirements benefits.

Defendant married Opal Marie Marshall on March 23, 1985. While married, defendant designated Opal Marie Marshall as the beneficiary of his interest in a Boeing Company Employee Retirement Plan (BCERP). Defendant retired from Boeing on June 30, 1987. Two months prior to his retirement, he elected the joint and surviving spouse pension option under his BCERP. Defendant and Opal Marie Marshall were divorced on May 9, 1989. According to Paragraph 9 of the Journal Entry of Judgment and Decree of Dissolution of Marriage (divorce decree):

> Both parties shall have as their sole and separate property free and clear of any right, title or interest of the other, the checking and savings accounts, individual retirement accounts, certificates of deposit and other retirement accounts in their individual names.

Other provisions of the divorce decree required the parties to take action to divest themselves of any interest in property awarded to the other party.

Defendant requested plaintiffs to remove Opal Marie Marshall as the beneficiary of his interest in the BCERP. Plaintiffs refused the request. Defendant thereafter instituted contempt proceedings in the state court domestic case. Plaintiffs responded by filing this lawsuit.

### Subject Matter Jurisdiction

■ Defendant argues that this court lacks subject matter jurisdiction to render declaratory or injunctive relief. Plaintiffs respond that this court has jurisdiction by virtue of ERISA.[2] Plaintiff points to the broad preemption provisions of ERISA and argues that resort to ERISA is necessary to adjudicate the dispute between the parties.

■ ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). In order for preemption to be found, there must be a state law, an employee benefit plan, and the state law must "relate to" the employee benefit plan. *National Elevator Industry, Inc. v. Calhoon,* 957 F.2d 1555, 1557 (10th Cir.1992).

For purposes of § 1144(a), "state law" includes "all laws, decisions, rules, regulations or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1). The defendant's efforts to obtain contempt sanctions against the Plan Administrators clearly fall within the ambit of this definition. There is also no dispute that the BCERP is an "employee welfare benefit plan" within the meaning of 29 U.S.C. § 1002(1).

■ A state law relates to an employee benefit plan "if it has a connection with or reference to such a plan." *Calhoon,* 957 F.2d at 1558 (quoting *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983)). *Calhoon* noted that the Ninth Circuit had recognized four types of laws that "relate to" ERISA plans:

> First, laws that regulate the type of benefits or terms of ERISA plans. Second, laws that create reporting, disclosure, funding, or vesting requirements for ERISA plans. Third, laws that provide rules for the calculation of the amount of benefits to be paid under ERISA plans. Fourth, laws and common-law rules that provide remedies for misconduct growing out of the administration of the ERISA plan.

*Id.* at 1558–59 (quoting *Martori Bros. Distributors v. James–Massengale,* 781 F.2d 1349 (9th Cir.), *cert. denied* 479 U.S. 1018, 107 S.Ct. 670, 93 L.Ed.2d 722 (1986) (Citations omitted)).

Conversely, laws of general application—not specifically targeting ERISA plans—that involve traditional areas of state regulation and do not affect relations among the principal ERISA entities—the employer, the plan,

---

1. 29 U.S.C. § 1056(d)(3). Defendant has agreed that the domestic orders do not qualify as a QDRO.

2. 29 U.S.C. § 1001 *et seq.*

the plan fiduciaries, and the beneficiaries, do not relate to an ERISA plan. *Id.* at 1559 (Citations omitted).

Defendant's state court contempt proceedings "relate to" the BCERP. Through this device, defendant is attempting to revoke his beneficiary designation, which in turn may affect his monthly benefits. The relationship between the BCERP, its fiduciaries, and the beneficiaries is directly implicated.

The court finds that it has subject matter to adjudicate this lawsuit by virtue of the preemption provisions of ERISA.

### Standards for 12(b)(6) Motions

■ The standards governing a 12(b)(6) motion to dismiss for failure to state a claim are well established. A court may not dismiss a claim for failure to state a claim upon which relief can be granted unless it determines that " 'plaintiff can prove no set of facts in support of his claim to entitle him to relief.' " *Bradley v. United States,* 951 F.2d 268, 270 (10th Cir.1991) (quoting *Morgan v. City of Rawlins,* 792 F.2d 975, 978 (10th Cir.1986)). The court "must assume as true all well-pleaded facts, construing them in favor of the non-moving party." *Housing Auth. of the Kaw Tribe v. City of Ponca City,* 952 F.2d 1183, 1187 (10th-Cir.1991).

### Discussion

■ Defendant initiated the contempt action against the plaintiffs in response to their refusal to remove his ex-wife as the designated beneficiary under his retirement plan. Defendant argues that a divorced spouse may waive his or her rights as a beneficiary of a retirement plan in a divorce settlement. In defendant's view, such a waiver took place in this case. In support of his argument, defendant places reliance on *Fox Valley & Vic. Const. Wkrs. Pension F. v. Brown,* 897 F.2d 275 (7th Cir.), (en banc), *cert. denied* 498 U.S. 820, 111 S.Ct. 67, 112 L.Ed.2d 41 (1990).

In *Fox Valley,* the Pension Fund filed an interpleader action to determine the proper recipient of death benefits payable because of the death of the Fund participant. The decedent, James Brown, married Laurine in 1982.

In 1986, the decedent designated Laurine as his beneficiary under the Plan. Later that year, James and Laurine divorced. They agreed to a property settlement under which each agreed to waive any interest or claim in any retirement or pension plan resulting from the other party's employment. James never changed his designated beneficiary after the divorce, and died in 1987. Laurine thereafter attempted to claim the benefits. The Fund refused and filed an interpleader action, asserting that it was unsure as to the legal effect of the marital property settlement agreement. The Fund named the decedent's mother as a defendant, since she would receive the benefits if it was determined that Laurine had waived her claim.

The court first addressed the scope of ERISA's anti-alienation provisions. It stated that while ERISA preempts any attempt to alienate or assign benefits by a domestic relations order failing to qualify as a QDRO, the marital property settlement at issue was not an assignment or alienation of benefits by the decedent. In reaching this conclusion, the court found that Laurine had misconstrued the purpose behind the spendthrift provisions and the intended effect of a QDRO. The spendthrift provisions of ERISA are designed to "ensure that the employee's accrued benefits are actually available for retirement purposes", and focus on the alienation or assignment of benefits by a participant, not the waiver of benefits made by a designated beneficiary. *Id.* at 279. The QDRO exception, which specifies the procedures necessary to assign benefits, need not be followed when a nonparticipant is waiving an interest in pension benefits. Thus, the court held that a proper waiver of interest by a nonparticipant in a plan is not preempted by ERISA's anti-alienation provisions. *Id.* at 280.

The court then turned its attention to whether Laurine had made an effective waiver of interest. ERISA is silent on this issue. In such circumstances, a federal court must fashion federal common law rules to govern ERISA suits. The court found that a spouse can waive rights to a benefit through a specific waiver in a divorce settlement. The court held that such a waiver had occurred in the case before it, and awarded the benefits to the decedent's mother. *Id.* at 282.

Defendant's reliance upon *Fox Valley* is misplaced. The decedent in *Fox Valley* had not yet retired and was free to change his beneficiary designation. In this case, the defendant has retired and is not free to change his beneficiary designation. The Notice of Retirement Action and Election of Benefit Form of Payment which defendant signed stated: "The elected form of pension payment shall be revocable and reelectable in writing *prior to the effective retirement date.*" (emphasis supplied) Defendant cannot avoid this clear prohibition against post-retirement revocation or reelection by asserting that his ex-wife "waived" her entitlement to benefits in a divorce decree which was filed long after any "... applicable election period." *See* 29 U.S.C. § 1055(c)(1)(A)(i).

At the time defendant made his election under the BCERP, he could have chosen either the Straight Life Basis or the Joint and Surviving Spouse Option Form of pension payment. Under the former option, no pension benefits are payable after the death of the retiree. Under the latter option, the retiree receives a lesser amount, but with the tradeoff that benefits would continue to be paid to his designated spouse in the event that he predeceased her. Once defendant retired, on July 1, 1987, his election of the Joint and Surviving Spouse Option became irrevocable and could not be changed through waiver by the designated beneficiary. Although it appears that the filing of this case prevented the state court from making a final ruling, it is clear that the state court would have no power to affect the defendant's beneficiary designation in the divorce decree.

Defendant shall have 10 days from the date of this order to show cause why judgment should not be entered in favor of plaintiffs for the relief sought in paragraphs A and D of their prayer for relief (Doc. 1, pp. 7 and 8). The relief prayed for in paragraph B is mooted by defendant's concession and the relief prayed for in paragraph C will be denied.

IT IS SO ORDERED.