Vera Mae HOPKINS, Plaintiff,

v.

AT & T GLOBAL INFORMATION
SOLUTIONS COMPANY, f/k/a
NCR Corporation, Defendant.

Civil Action No. 6:95–0336.

United States District Court,
S.D. West Virginia,
Huntington Division.

Feb. 16, 1996.

R. Vance Golden, III, Parkersburg, WV, for plaintiff.

Janice P. Epperly, Huntington, WV, for defendant.

## MEMORANDUM OPINION AND ORDER

GOODWIN, District Judge.

Pending before the Court are cross-motions for summary judgment by the parties.

For the reasons set forth below, the Court **GRANTS** the motion for summary judgment of the defendant AT & T Global Information Solutions Company (AT & T) and **DENIES** the motion for summary judgment of the plaintiff Vera Mae Hopkins.

## I.

Paul R. Hopkins and Vera Mae Hopkins were married from 1960 until their divorce in 1986. In the Wood County Circuit Court's order granting the parties a divorce, the circuit court awarded Vera Mae Hopkins alimony and Mr. Hopkins retained his pension benefits. Following the divorce, Mr. Hopkins married Sherry Hopkins. At the time of his retirement in 1993, Mr. Hopkins, still married to Sherry Hopkins, became eligible for pension benefits pursuant to a pension plan operated by his employer AT & T.

The Employee Retirement Income Security Act (ERISA) and Retirement Equity Act (REA) provide that such pension benefits generally must be taken in the form of a joint and surviving spouse annuity. *See* 29 U.S.C. § 1055 (Supp.1995). Under the joint and surviving spouse annuity, Mr. Hopkins receives a fixed income for life, and his spouse Sherry Hopkins will receive 50% of that fixed income for the remainder of her life should she survive him.

In 1994, Vera Mae Hopkins filed a petition for modification of the state court's order of divorce, in part because of significant arrearages in Mr. Hopkins's payment of alimony. The state circuit court modified its 1986 divorce order by directing that Vera Mae Hopkins be made an alternate payee of the pension plan, as provided in 29 U.S.C. § 1056(d)(3)(B)(i)(I). The modification orders directed that Vera Mae Hopkins receive $433.33 per month from the pension benefit that Mr. Hopkins currently receives and that Vera Mae Hopkins, not Mr. Hopkins's current spouse, be treated as the surviving spouse of Mr. Hopkins for purposes of the surviving spouse benefit. This case presents the question of whether the latter modification order designating Vera Mae Hopkins as the surviving spouse is a qualified domestic relations order (QDRO) within the meaning of ERISA and REA. This precise question appears to be one of first impression.

## II.

ERISA generally provides that federal law with regard to pension plan benefits may not be assigned or alienated. 29 U.S.C.A. § 1056(d)(1) (Supp.1995). Furthermore, ERISA generally provides that it preempts state pension benefit laws. *Id.* § 1144(a) (1985). The statute, however, creates a narrow exception to these rules for QDROs. *Id.* § 1056(d)(3)(B) (Supp.1995).

Section 1056(d)(3)(B)(ii) defines a domestic relations order as "any judgment, decree, or order ... which—(I) relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant, and (II) is made pursuant to a State domestic relations law...." A domestic relations order is qualified if it:

(a) "creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan";

(b) "clearly specifies—

  (i) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,

  (ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,

  (iii) the number of payments or periods to which such order applies, and

  (iv) each plan to which such order applies"; and

(c) ...

  (i) "does not require a plan to provide any type or form of benefit, or any option, not otherwise provided under the plan,

  (ii) does not require the plan to provide increased benefits (determined on the basis of actuarial value), and

(iii) does not require the payment of benefits to an alternate payee which are required to be paid to another alternate payee under another order previously determined to be a qualified domestic relations order."

*Id.* § 1056(d)(3)(B)(i), (d)(3)(C), (d)(3)(D).

■ AT & T argues that the state court order in this case is not a QDRO for three reasons: First, the state court order does not relate to the provision of child support, alimony payments, or property rights. Second, the state court order divests a nonparticipant of pension benefits. Third, the state court order requires the plan to provide increased benefits. While the Court does not find AT & T's first argument persuasive, the Court finds that the state court order is not a QDRO because it divests a nonparticipant of her pension benefit and because it may require AT & T to provide increased benefits.

Under ERISA, a domestic relations order is qualified if, among other things, it "assigns to an alternate payee the right to … receive all or a portion of the benefits payable with respect to a *participant* under a plan." *Id.* § 1056(d)(3)(B)(i)(I) (emphasis added). ERISA defines a "participant" as "any employee or former employee of an employer … who is or may become eligible to receive a benefit … from an employee benefit plan … or whose beneficiaries may be eligible to receive any such benefit." *Id.* § 1002(7). ERISA defines a "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." *Id.* § 1002(8). Based on ERISA's definitions, Paul R. Hopkins is a participant and Sherry Hopkins is a beneficiary under AT & T's benefit plan. *See also Dickerson v. Dickerson,* 803 F.Supp. 127, 132 (E.D.Tenn.1992) (stating that spouse of participant may be alternate payee or beneficiary, but not participant).

The question thus becomes whether Sherry Hopkins's surviving spouse benefit is a "benefit payable with respect to" Mr. Hop-

kins within the meaning of ERISA. The Court finds that her surviving spouse benefit is not. Instead, upon Mr. Hopkins's retirement, the surviving spouse benefit vested in Sherry Hopkins and became a benefit payable with respect to Sherry Hopkins, not Mr. Hopkins.

Had the state court entered its domestic relations order before Mr. Hopkins's retirement, the surviving spouse benefit clearly would have been a benefit payable with respect to Mr. Hopkins. This is because, before Mr. Hopkins's retirement, Sherry Hopkins's interest in the surviving spouse benefit was speculative and had not vested. Had Sherry Hopkins and Mr. Hopkins divorced before his retirement, she would not have received a surviving spouse benefit in the absent a QDRO. Similarly, had Sherry Hopkins died before Mr. Hopkins's retirement, Mr. Hopkins would have been entitled to a full pension not reduced by any surviving spouse benefit.

At the time of Mr. Hopkins's retirement, however, Sherry Hopkins's status changed. Because Sherry Hopkins was married to Mr. Hopkins at the time, because there was no QDRO concerning Vera Mae Hopkins, and because Sherry Hopkins had not waived her right to the surviving spouse benefit, Sherry Hopkins gained a vested interest in the surviving spouse benefit. According to § 1055(h)(1), vesting occurs when one has a nonforfeitable right to any portion of an accrued benefit.[1] Section 1002(19) defines a "nonforfeitable" right as one "obtained by a participant or his beneficiary to that part of an immediate or deferred benefit under a pension plan … which is unconditional, and which is legally enforceable against the plan." Section 1002(19) thus makes clear that at the time that Sherry Hopkins became entitled to the deferred surviving spouse benefit (that is, at Mr. Hopkins's retirement), she gained a nonforfeitable, unconditional, and legally enforceable interest in the surviving spouse benefit. The Wood County Circuit Court's domestic relations order could not divest

---

1. Section 1055(h)(1) defines "vested participant," a word contained in § 1055. Sherry Hopkins, of course, is a vested beneficiary, not a vested participant. There is no reason to believe,

however, that "vested" means something different in the context of beneficiaries than it does in the context of participants.

Sherry Hopkins of her vested interest because she is a beneficiary of, not a participant in, the pension plan. *See id.* § 1056(d)(3)(B)(i)(I).

The decision in *Anderson v. Marshall,* 856 F.Supp. 604 (D.Kan.1994), supports this conclusion. In *Anderson,* a benefit plan participant selected joint and surviving spouse benefits at the time of his retirement. Two years later, the participant and his wife divorced. As part of the divorce order, the wife agreed to give up her interest as a beneficiary of the plan. In a declaratory judgment action brought by the pension plan, the *Anderson* court held the wife could not revoke her surviving spouse benefit. "Once defendant retired," wrote the court, "his election of the Joint and Surviving Spouse Option became irrevocable and could not be changed through waiver by the designated beneficiary." *Id.* at 607.

Further supporting the Court's conclusion is language in ERISA that provides that a domestic relations order may not "require the [benefit] plan to provide increased benefits." 29 U.S.C. § 1056(d)(3)(D)(ii). When Mr. Hopkins retired, the amount of the joint and surviving spouse annuity was determined actuarially based not only on Mr. Hopkins's age, but also on Sherry Hopkins's age. If Sherry Hopkins is older than Vera Mae Hopkins, a court-ordered transfer of Sherry Hopkins's survivor benefits to Vera Mae Hopkins would require AT & T to provide increased benefits.

### III.

For the foregoing reasons, the Court **HOLDS** that a state domestic relations order directing that a former spouse be designated as the surviving spouse for purposes of a participant's ERISA-qualified pension benefit is not a QDRO within the meaning of ERISA and REA if the order is entered after the surviving spouse benefit vests in another beneficiary upon the participant's retirement. Because the surviving spouse benefit vested in Sherry Hopkins at the time of Paul R. Hopkins's retirement, the Court **GRANTS** the motion for summary judgment of the defendant AT & T and **DENIES** the motion for summary judgment of the plaintiff Vera Mae Hopkins.

Finally, the Court notes the narrow reach of its Memorandum Opinion and Order. While the Order precludes the state court from designating Vera Mae Hopkins, instead of Sherry Hopkins, as the surviving spouse for purposes of the pension benefit, it does not preclude the state court from awarding Vera Mae Hopkins a larger portion of Mr. Hopkins's pension benefit or from using other means to guarantee an equitable distribution of the marital property.