594 S.E.2d 548

**Frances WALSH as Personal Representative of the Estate of Jerome Walsh, Deceased, and in her individual capacity, Appellant,**

v.

**Joyce K. WOODS, f/k/a Joyce K. Walsh, Respondent.**

**No. 3758.**

Court of Appeals of South Carolina.

Heard Dec. 11, 2003.

Decided March 15, 2004.

Rehearing Denied April 22, 2004.

Russell H. Putnam, Jr., of Hinesville;  for appellant.

John S. Nichols, of Columbia;  Kelli Lister Sullivan, of Columbia;  for respondent.

CURETON, J.:

Frances Dudley Walsh (Frances), individually and in her capacity as personal representative of the estate of her deceased husband, Jerome J. Walsh (Walsh), brought this action against Walsh's former wife, Joyce K. Woods (Joyce). In her complaint, Frances seeks relief pertaining to the disposition of surviving spouse benefits made available through Walsh's retirement plan. Frances appeals from the trial court's order granting Joyce's motion for summary judgment. We affirm.

## FACTS

Walsh married his first wife, Joyce, in 1957, and the two separated in 1970. Although they continued to live apart, Walsh and Joyce remained married for twenty years after their separation. In 1989, Walsh retired from E.I. du Pont de Nemours and Company (DuPont) after approximately forty years of employment. During his tenure at DuPont, Walsh participated in a DuPont sponsored pension benefits plan governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. 1001 *et. seq.* ("ERISA"). Contemporaneously with his retirement, Walsh signed a Post Retirement Company–Paid Survivor Benefits and Spouse Benefit Option designating Joyce, to whom he was still married, as the sole beneficiary of his surviving spouse benefits plan in the event he predeceased her. Walsh's monthly benefit was therefore reduced by the amount necessary to cover the cost of the survivor benefit plan.

Walsh and Joyce were divorced by order of the family court dated August 24, 1990. Incident to the divorce, Walsh and Joyce entered into an agreement which the family court approved, adopted, and incorporated into the divorce decree. The decree provided, in relevant part:

[T]he parties shall sign whatever documents or other paperwork that is necessary to enforce this Agreement. I find that the parties have further agreed that each shall retain what ... retirement plans, pension plans ... etc., that he or she has in his or her possession. If the wife is required to sign any papers concerning the husband's retirement or benefit options from DuPont of Westinghouse, then she shall sign those.

It is undisputed Walsh never presented Joyce with any documents to sign regarding his retirement benefits, and that neither party attempted to obtain a Qualified Domestic Relations Order (QDRO) reassigning the surviving spouse benefits during Walsh's lifetime.

On May 31, 1991, Walsh advised DuPont he was divorced from Joyce and desired to change the beneficiary of his pension plan to his wife Frances and requested the paperwork for this purpose [1]. In 1994, Walsh married Frances, with whom he had been involved since 1980. On November 30, 1994, Walsh wrote to DuPont again advising the company that he was married to Frances and wished to designate her as beneficiary under his retirement plan, and that the company should send him any documentation necessary to effectuate the change in beneficiary. Despite the May 31, 1991 letter and other subsequent communications with DuPont wherein Walsh referred to Frances as his designated beneficiary, the change Walsh requested was never made legally effective.

Walsh died testate on January 27, 1996. Pursuant to the terms of his will, Frances became the sole beneficiary and the Personal Representative of his estate.

In 1997, Frances instituted an action against DuPont, which was removed to federal court; seeking a judicial finding that Walsh's surviving spouse benefits (SSB) should be paid to her and not Joyce. DuPont moved for and was granted summary judgment based on the fact that no QDRO existed terminating Joyce's right to receive the benefits at the time of Walsh's retirement.

Thereafter, Frances contacted John W. Harte, the attorney who represented Walsh in his divorce from Joyce, and requested that he prepare and submit a QDRO to DuPont. Harte prepared the QDRO, then contacted Vickie Johnson, the attorney who represented Joyce in the divorce action, and requested that she obtain Joyce's signature on the document. Joyce did not sign the QDRO but authorized Johnson to sign it on her behalf. Joyce noted on the document, however, that she authorized her signature under protest and out of concern she would be held in contempt of court if she refused to sign.

---

1. Apparently, Walsh thought he had a common law marriage with Frances.

In August of 1998, Harte submitted the QDRO to DuPont. In a letter dated September 16, 1998, DuPont advised Harte that the document was unenforceable as a QDRO inasmuch as "[a] QDRO cannot be entered after the death of the participant. A participant must be a living person. There was no QDRO in effect at the participant's death that awarded any benefits to an alternate payee. Therefore, there are no benefits payable pursuant to a QDRO." In addition, the letter from DuPont advised that even if the document had been prepared at some point prior to Walsh's death, it would nonetheless be ineffective to divest Joyce of her surviving spouse benefits inasmuch as ERISA requires that married participants be offered qualified joint and survivor annuities and their spouses must be offered the option to accept or waive the benefit. Once this election is made, it is irrevocable.

Frances filed the instant action against Joyce on December 18, 2000, seeking recovery under seven theories of relief: 1) unjust enrichment; 2) "law of the case"; 3) res judicata; 4) collateral estoppel; 5) breach of contract; 6) bad faith breach of contract; and 7) conversion. Joyce answered, denying Frances was entitled to the relief sought in her complaint, and asserted as defenses: 1) expiration of the statute of limitations; 2) failure to state a claim upon which relief can be granted; 3) laches; and 4) res judicata.

The parties filed cross motions for summary judgment. Joyce argued, *inter alia,* that all of Frances's causes of actions failed because the surviving spouse benefits vested in Joyce in 1989, at the time of Walsh's retirement, and she could not now be divested of her right to the benefits. Joyce further asserted the applicable statute of limitations bars the claims. In support of her cross motion, Frances asserted generally that no genuine issues of material fact existed and specifically that Joyce had waived her rights to the benefits in the divorce decree. In addition, Frances asserted that the court could enforce the property settlement agreement by requiring Joyce to disgorge herself of all surviving spouse benefit payments she had received in the past and will receive in the future by transferring the payments to Frances.

By order dated January 28, 2001, the trial court granted Joyce's motion for summary judgment. Specifically, the court

cited *Hopkins v. AT & T*, 105 F.3d 153, 157 (4th Cir.1997), for the propositions that 1) surviving spouse benefits vest in a plan participant's current spouse on the date the participant retires, whether or not spouses are married at the time the participant dies, and 2) surviving spouse benefits may not be paid to a spouse who marries a participant after the participant's retirement. The trial court expressly determined the holding in *Hopkins* was determinative of the entire case and, therefore, declined to address Joyce's other grounds for summary judgment and further declined to reach Frances's cross motion for summary judgment. This appeal followed.

## LAW/ANALYSIS

■ Joyce argues in her Petition for Rehearing that the dispositive issue on appeal is whether Frances's claims based on contract and/or conversion are barred by the applicable statute of limitations. We agree.

■■ The statute of limitations begins to run at the time the cause of action accrues. *Harvey v. S.C. Dept. of Corrections*, 338 S.C. 500, 508, 527 S.E.2d 765, 769 (Ct.App.2000) (citing *Matthews v. City of Greenwood*, 305 S.C. 267, 269, 407 S.E.2d 668, 669 (Ct.App.1991)). In analyzing a limitations defense, "[t]he fundamental test for determining whether a cause of action has accrued is whether the party asserting the claim can maintain an action to enforce it." *Id.* (quoting *Matthews*, 305 S.C. at 269, 407 S.E.2d at 669). Thus, a particular cause of action accrues "at the moment when the plaintiff has a legal right to sue on it." *Id.*

■■ The statute of limitations for both an action upon a contract and a conversion claim is three (3) years. S.C.Code Ann. § 15–3–530(1) and (5) (Supp.2003). Additionally, under § 15–3–535 an action predicated on an injury to the person or rights of another not arising on contract must be brought within three years after the person knew "or by the exercise of reasonable diligence should have known that he had a cause of action." Thus, under the discovery rule the statute of limitations begins to run from the date the injured party either knows or should have known by the exercise of due diligence that a cause of action arises from the wrongful conduct. *Dean v. Ruscon Corp.*, 321 S.C. 360, 363, 468 S.E.2d

645, 647 (1996). A cause of action arises when it "should have been discovered through exercise of reasonable diligence when the facts and circumstances would have put a person of common knowledge and experience on notice that some right had been invaded or a claim against another party might exist." *Maher v. Tietex Corp.*, 331 S.C. 371, 377, 500 S.E.2d 204, 207 (Ct.App.1998).

To determine whether the statute of limitations has run, the Court does not consider whether the particular plaintiff in the case before it knew he or she had a claim but rather "whether the circumstances of the case would put a person of common knowledge and experience on notice that some right of his has been invaded, or that some claim against another party might exist." *Young v. S.C. Department of Corrections*, 333 S.C. 714, 719, 511 S.E.2d 413, 416 (Ct.App. 1999).

In the instant case, Frances retained counsel to enforce her rights to her husband's SSB when she learned that DuPont was paying the SSB to Joyce regardless of any waiver of her rights to the benefits or approval of that waiver by the family court. On November 20, 1997, United States District Judge Matthew Perry dismissed the claims Frances brought against DuPont. We hold that this dismissal should have put Frances on notice, and would put *any* person of common knowledge and experience on notice, that she individually and on behalf of Mr. Walsh's estate had a cause of action against Joyce. Because Frances did not file her complaint against Joyce until December 11, 2000, over three years after Judge Perry issued his order, Frances's claims against Joyce are barred by the statute of limitations.[2]

Accordingly, the decision of the circuit court is

**AFFIRMED.**

STILWELL and HOWARD, JJ., concur.

---

**2.** Having decided that the cause of action is barred by the applicable statute of limitations, we need not address the remaining issues raised on appeal.