638 S.E.2d 85

Frances WALSH, as personal representative of
the estate of Jerome Walsh, deceased, and
in her individual capacity, Appellant,

v.

Joyce K. WOODS, f/k/a Joyce K. Walsh, Respondent.

No. 4163.

Court of Appeals of South Carolina.

Heard May 11, 2006.
Decided Oct. 16, 2006.
Rehearing Denied Dec. 18, 2006.

320

Russell H. Putnam, Jr., of Hinesville, GA, for Appellant.

John S. Nichols and Kelli Lister Sullivan, of Columbia, for Respondent.

CURETON, A.J.:

Frances Walsh (Wife II), individually and in her capacity as personal representative of the estate of her deceased husband, Jerome J. Walsh (Husband), brought this action against Husband's former wife, Joyce K. Woods (Wife I), seeking relief pertaining to the disposition of surviving spouse benefits (SSB) made available through Husband's retirement plan. Wife II appeals the trial court's order granting Wife I's motion for summary judgment. We affirm.

## FACTS

We note at the commencement that although some changes and additions have been made, the facts largely mirror those in *Walsh v. Woods*, 358 S.C. 259, 594 S.E.2d 548 (Ct.App.2004), rev'd *Walsh v. Woods*, Mem. Op. No. 2005–MO–043 (S.C.Sup. Ct. filed Sept. 19, 2005). Husband married Wife I in 1957, and they separated in 1970. Although Husband and Wife I lived apart, they remained married for twenty years after their separation. In 1980, Husband met Wife II and they began dating. In 1989, after forty years of employment at E.I. du Pont de Nemours & Co. (DuPont), Husband retired. During his tenure at DuPont, Husband participated in a joint and survivor annuity plan governed by the Employee Retirement Income Security Act (ERISA). When he retired, Husband signed a Post Retirement Company–Paid Survivor Benefits and Spouse Benefit Option designating Wife I, to whom he was still married, as the beneficiary of his SSB plan in the event he predeceased her.

On August 24, 1990, Husband and Wife I divorced. Incident to the divorce, they entered into an agreement which the family court approved, adopted, and incorporated into the divorce decree. The decree provided, in relevant part:

> [T]he parties shall sign whatever documents or other paperwork that is necessary to enforce this Agreement. I find that the parties have further agreed that each shall retain what ... retirement plans, pension plans ... etc., that he or she has in his or her possession. If the wife is required to sign any papers concerning the husband's retirement or benefit options from DuPont of Westinghouse, then she shall sign those.

Husband never presented Wife I with any documents to sign regarding his retirement plan, and neither party obtained a Qualified Domestic Relations Order (QDRO) during Husband's lifetime.

On May 31, 1991, Husband wrote DuPont a letter informing the company that he had divorced Wife I and that his "ex-wife has waived any claim to my pensions ... and this has been documented as part of the divorce decree." The letter further stated Husband wished to change his beneficiary to Wife II. In 1994, Husband and Wife II married. On November 30,

1994, Husband again wrote DuPont. Apparently, Husband believed his first letter to DuPont sufficed to change the beneficiary of his plan's SSB from Wife I to Wife II. Accordingly, his second letter advised DuPont he wished to change the beneficiary from Frances Dudley to Frances Dudley Walsh, inasmuch as he had married Wife II. Further, the letter stated "[i]f this letter does not suffice [to change the beneficiary], please send me the necessary paperwork to have my wife eligible for ... spouse benefits." Despite the two letters to DuPont, the change Husband requested was never made legally effective.

On January 27, 1996, Husband died. His will named Wife II as the sole beneficiary and the personal representative of his estate. After Husband's death, DuPont began paying benefits to Wife I. In 1997, Wife II filed suit against DuPont, which was removed to federal court, seeking a judicial determination that the SSB should be paid to her rather than Wife I. DuPont successfully moved for summary judgment on the grounds no QDRO existed terminating Wife I's right to receive benefits at the time of Husband's retirement.

Wife II then contacted John W. Harte, the attorney who represented Husband in his divorce from Wife I, and requested he prepare and submit a QDRO to DuPont. Harte prepared the QDRO, then contacted Vickie Johnson, the attorney who represented Wife I in the divorce action, and requested she obtain Wife I's signature on the document. Wife I did not sign the QDRO, but authorized Johnson to sign it on her behalf. Wife I noted on the document, however, that she authorized her signature under protest and out of concern she would be held in contempt of court if she refused to sign.

After Harte submitted the QDRO to DuPont, he received a letter from the company advising him that the document was not valid because it did not comply with the mandates of the Internal Revenue Code. Further, the letter stated that "[a] QDRO cannot be entered after the death of the participant. A participant must be a living person. There was no QDRO in effect at the participant's death that awarded any benefits to an alternate payee. Therefore, there are no benefits payable pursuant to a QDRO." In addition, DuPont's letter advised that even if the document had been prepared at some point

after his retirement, but prior to Husband's death, it would nonetheless be ineffective to divest Wife I of her SSB because Wife I owned those benefits which vested upon Husband's retirement.

When DuPont refused to pay the SSB to Wife II, she commenced an action to recover all monies past, present and future paid to Wife I. Her suit, filed in the Court of Common Pleas for Richland County, was subsequently removed to the United State District Court for the District of South Carolina. DuPont then successfully moved for summary judgment.

On December 18, 2000, Wife II filed the instant action against Wife I seeking recovery under the following seven legal and equitable theories: (1) unjust enrichment; (2) "law of the case;" (3) res judicata; (4) collateral estoppel; (5) breach of contract; (6) bad faith breach of contract; and (7) conversion. Wife I answered, denying Wife II was entitled to the relief sought in her complaint, and asserted as defenses: (1) expiration of the statute of limitations; (2) failure to state a claim upon which relief can be granted; (3) laches; and (4) res judicata.

The parties filed cross motions for summary judgment. Wife I argued, *inter alia,* that all of Wife II's causes of action failed because the SSB vested in Wife I in 1989, at the time of Husband's retirement, and could not now be divested. Wife I further· asserted the applicable statute of limitations barred Wife II's claims. In support of her cross motion, Wife II asserted no genuine issues of material fact existed that Wife I had waived her rights to the benefits in the divorce proceeding. In addition, Wife II asserted that the trial court could enforce the property settlement agreement by requiring Wife I to disgorge herself of all SSB payments she had received in the past and will receive in the future by transferring the payments to Wife II.

The trial court, relying on *Hopkins v. AT & T,* 105 F.3d 153, 157 (4th Cir.1997), granted Wife I's motion for summary judgment. Under *Hopkins,* the trial court reasoned that (1) SSB vests in a plan participant's current spouse on the date the participant retires, whether or not spouses are married at the time the participant dies, and (2) surviving spouse benefits may not be paid to a spouse who marries a participant after

the participant's retirement. The trial court expressly determined the holding in *Hopkins* was determinative of the entire case and, therefore, declined to address Wife I's other grounds for summary judgment and further declined to reach Wife II's cross motion for summary judgment.

Wife II appealed, and this court reversed, finding the trial court erred in determining *Hopkins* was dispositive of all of the issues on appeal because given the facts, the case of *Estate of Altobelli v. International Business Machines Corporation*, 77 F.3d 78 (4th Cir.1996), also applied. Further, we found the trial court erred in reasoning that ERISA governed the disposition of all of Wife II's legal and equitable claims. Wife I petitioned for rehearing on the grounds that the statute of limitations barred Wife II's claims. We withdrew our opinion reversing the trial court's grant of summary judgment and affirmed the trial court based on the statute of limitations. The Supreme Court reversed, finding the statute of limitations did not bar Wife II's claims and remanded the case to this court to determine whether the trial court erred in granting summary judgment to Wife I.

## STANDARD OF REVIEW

When reviewing the grant of a summary judgment motion, appellate courts apply the same standard which governs the trial court under Rule 56(c), SCRCP, which states that summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), SCRCP; *Helms Realty, Inc. v. Gibson–Wall Co.*, 363 S.C. 334, 340, 611 S.E.2d 485, 488 (2005). On appeal from an order granting summary judgment, the appellate court will review all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the non-moving party below. *Willis v. Wu*, 362 S.C. 146, 150–51, 607 S.E.2d 63, 65 (2004); *see also, Schmidt v. Courtney*, 357 S.C. 310, 316–17, 592 S.E.2d 326, 330 (Ct.App. 2003) (stating all ambiguities, conclusions, and inferences arising from the evidence must be construed most strongly against the moving party).

Summary judgment is not appropriate when further inquiry into the facts of the case is desirable to clarify the application

of the law. *Gadson v. Hembree*, 364 S.C. 316, 320, 613 S.E.2d 533, 535 (2005); *Montgomery v. CSX Transp., Inc.*, 362 S.C. 529, 542, 608 S.E.2d 440, 447 (Ct.App.2004). Even when there is no dispute as to evidentiary facts, but only as to the conclusions or inferences to be drawn from them, summary judgment should be denied. *Nelson v. Charleston County Parks Recreation Comm'n*, 362 S.C. 1, 5, 605 S.E.2d 744, 746 (Ct.App.2004). However, when plain, palpable, and indisputable facts exist on which reasonable minds cannot differ, summary judgment should be granted. *Ellis v. Davidson*, 358 S.C. 509, 518, 595 S.E.2d 817, 821 (Ct.App.2004).

## LAW/ANALYSIS

### I.

As a threshold matter, we first turn our attention to Wife I's assertion that Wife II failed to properly preserve the issue of whether her legal and equitable claims were barred by ERISA because the trial court expressly declined to rule on the issues. Wife I argues because Wife II failed to make a Rule 59(e), SCRCP motion requesting the trial court address such issues, she cannot argue them on appeal. We disagree.

The trial court found *Hopkins v. AT & T*, 105 F.3d 153, 157 (4th Cir.1997), barred Wife II's claim and therefore, the court ruled that it was "unnecessary to reach Frances'[s] cross motion for summary judgment." In so ruling, the trial court adopted the analysis espoused by *Hopkins* and implicitly denied Wife II's claims. A Rule 59(e) motion is required to preserve issues that have not been ruled upon by the trial court. *See Wilder Corp. v. Wilke*, 330 S.C., 71, 77, 497 S.E.2d 731, 734 (1998) (noting that proper use of a Rule 59(e) motion is to preserve issues raised to but not ruled upon by the trial court). We hold that a motion under Rule 59(e) is unnecessary in this case because the trial court's decision with respect to Wife II's claims was clear. These issues were clearly raised to and ruled upon by the trial court. Accordingly, Wife II was not required to move for relief under Rule 59(e) in order to preserve the issues for review. Finally, because, ERISA claims involve subject-matter jurisdiction, they may be raised at any time. *Baker Hospital v. Isaac*, 301 S.C. 248, 391 S.E.2d 549 (1990).

## II.

Next, Wife II argues the trial court erred in granting Wife I summary judgment. She premises her claim upon the proposition that by virtue of Wife I's putative waiver of her rights to SSB, those benefits ipso facto became the property of Husband and thus passed to her under his will. We disagree.[1]

We begin our analysis by discussing the function of ERISA preemption law in this case. In the case of *Lewis v. Local 382, Int'l Brotherhood of Elec. Workers (AFL–CIO)*, 335 S.C. 562, 569, 518 S.E.2d 583, 586 (1999), our Supreme Court addressed the issue of preemption under ERISA:

Any and all State laws insofar as they relate to employee benefits plans are preempted by ERISA. 29 U.S.C. § 1144(a); *Duncan v. Provident Mut. Life Ins. Co. of Philadelphia*, 310 S.C. 465, 427 S.E.2d 657 (1993). This Court has recognized that the preemptive effect of ERISA is a broad one. *Baker Hosp. v. Isaac*, 301 S.C. 248, 391 S.E.2d 549 (1990). A state law "relates to" an ERISA-governed employee benefit plan, "if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983). Further, a state law "relates to" an ERISA plan if the rights or restrictions it creates are predicated on the existence of such a plan. *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990). However, those state actions which affect employee benefits plans in "too tenuous, remote or peripheral a manner" do not relate to the plan. *Shaw*, 463 U.S. 85, 90, 103 S.Ct. 2890, 77 L.Ed.2d 490.

---

1. We find it difficult, as a practical matter, to imagine that such an arrangement could ever happen because as explained in *Dorn v. Int'l Brotherhood of Elec. Workers, et. al.*, 211 F.3d 938, 941 (5th Cir.2000), an ERISA joint and survivor annuity is unlike a typical joint and survivor annuity "available in the commercial market, which commonly guarantees payment of a stipulated or determinable amount to two persons, frequently spouses, while both are living and after the death of either person, to whichever of the two survives." In an ERISA annuity "(1) the QJ & SA's (qualified joint and survivor annuity) annuity payments cease at the death of the participant spouse, regardless of whether his death occurs before or after the death of the non-participant spouse; and (2) if, but only if, the non-participant spouse survives the participant spouse does the survivor's annuity kick in." *Id.* at 942.

■ Here, it is inescapable that Wife II's claim to the SSB, like the retirement benefits in *Lewis,* are predicated upon the existence of the husband's pension plan. While ERISA related claims involve subject-matter jurisdiction, 29 U.S.C. § 1132(3)(1) vests both state and federal courts with concurrent subject-matter jurisdiction of certain civil actions brought by participants or beneficiaries against an employee benefit plan. Nevertheless, under preemption principles, federal ERISA law must control our decision on the issue of Wife II's claim to the SSB. *See Baker Hosp. v. Isaac,* 301 S.C. 248, 391 S.E.2d 549 (1990) (holding ERISA preempted a hospital's contract, promissory estoppel, negligence, and misrepresentation claims); *see also Dorn v. International Brotherhood of Electrical Workers, et. al.,* 211 F.3d 938 (5th Cir.2000) (holding a state law claim by an ex-wife regarding her rights to receive benefits from an ERISA plan necessarily "relates to" an ERISA plan and preempts Louisiana law of conversion).

The trial court concluded the ERISA provisions, as interpreted in *Hopkins,* were dispositive of Wife II's legal and equitable claims. On appeal, Wife II argues the case of *Estate of Altobelli v. IBM Corp.,* 77 F.3d 78 (4th Cir.1996) permits an ERISA participant's ex-spouse to waive, in a separate agreement, incorporated into a divorce decree, her interest as a beneficiary in her ex-husband's pension plan.

*Altobelli* analyzes the split among federal circuits on the issue of whether administrators of an ERISA plan are required to recognize a beneficiary's waiver of his or her benefits. The majority of circuits that have addressed this issue have held such waivers are valid under certain circumstances. *See Id.; Mohamed v. Kerr,* 53 F.3d 911 (8th Cir.1995); *Brandon v. Travelers Ins. Co.,* 18 F.3d 1321 (5th Cir.1994); *Metro. Life Ins. Co. v. Hanslip,* 939 F.2d 904 (10th Cir.1991); *Fox Valley Vicinity Constr. Workers Pension Fund v. Brown,* 897 F.2d 275 (7th Cir.1990) (en banc). Only two courts of appeals have disagreed, holding plan administrators need not look beyond the documents on file with the plan to determine whether there has been a valid waiver effectuated in outside private documents. *Krishna v. Colgate Palmolive Co.,* 7 F.3d 11 (2nd Cir.1993); *McMillan v. Parrott,* 913 F.2d 310 (6th Cir.1990).

In recognizing a split among the circuits, the *Altobelli* court followed the majority view and concluded that each of the parties in *Altobelli* "clearly intended to relinquish all interests in the pension plan of the other." *Id.* at 81. The court stated a beneficiary may waive pension benefits where the waiver specifically refers to and modifies the beneficiary interest, or through specific language in a divorce decree. *Id.* at 81.

The *Altobelli* court agreed with the Seventh Circuit that the anti-alienation clause does not apply to a beneficiary's waiver. According to the majority of federal courts, because ERISA does not explicitly address "waiver" by a beneficiary, the Fourth Circuit turned to federal common law to determine whether, and under what circumstances, an individual may validly waive her benefits in an ERISA plan. *See Altobelli*, 77 F.3d at 81. Under federal common law, an individual's waiver is valid if, "upon reading the language in the divorce decree, a reasonable person would have understood that she was waiving her beneficiary interest. . . ." *Clift v. Clift*, 210 F.3d 268, 271–72 (5th Cir.2000); *see also Mohamed*, 53 F.3d at 914–15 ("a property settlement agreement entered into pursuant to a dissolution may divest former spouses of beneficiary rights in each other's [ERISA benefits], if the agreement makes it clear that the former spouses so intend."). Moreover, "any waiver must be voluntarily made in good faith." *Clift*, 210 F.3d at 272.

However, *Altobelli* arose out of facts clearly distinguishable from those in the instant case. *Altobelli* dealt with a waiver of life insurance and pension plan benefits while the instant case deals with a waiver of SSB. The *Altobelli* decision only holds that the ex-wife of Altobelli had validly waived her rights to his pension benefits pursuant to a QDRO. We observe also that *Hopkins*, consistent with *Altobelli*, held that as far as Mr. Hopkins's pension benefits [2] were concerned, the first wife was entitled to them under the provisions of her QDRO. *Hopkins*, 105 F.3d at 155. The court noted, however, that "[b]enefits provided under a pension 'plan may not be assigned or alienat-

---

2. The *Hopkins* court expresses in clear terms the operation of a qualified joint and survivor annuity: "Under the joint and survivor annuity, Mr. Hopkins receives a fixed income for life (pension benefits) and if his spouse survives him, she will receive 50% of the fixed income (Surviving Spouse Benefits) for the remainder of her life." *Hopkins*, at 155.

ed,' 29 U.S.C.A. § 1056(d)(1), except pursuant to a 'qualified domestic relations order.'" *Id.* The court stated further that:

> ERISA defines a "domestic relations order" as any judgment, decree, or order which, "(I) relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant, and (II) is made pursuant to a state domestic relations law...." 29 U.S.C.A. § 1056(d)(3)(B)(ii). A domestic relations order is "qualified" if it, among other things, gives an alternate payee the right to "receive all or a portion of the benefits payable to a *participant* under an plan...." 29 U.S.C.A § 1056(d)(3)(B)(i)(I).
>
> .... AT & T contends that on the day Mr. Hopkins retired, the rights to Surviving Spouse Benefits vested in [Wife II], his current spouse. As a result, AT & T argues, the Surviving Spouse Benefits are no longer payable to a plan participant. Noting that a QDRO must relate to a benefit "payable with respect to a participant." 29 U.S.C.A. § 1056(d)(3)(B)(i)(I).

*Id.*

The *Hopkins* court agreed with AT & T's contention and held, as a matter of first impression in the federal courts, that Wife II's rights to the SSB vested upon Mr. Hopkins' retirement. *Id.* Moreover, the court cited with approval the case of *Anderson v. Marshall,* 856 F.Supp. 604, 607 (D.Kan. 1994) for the proposition that "upon retirement, the Surviving Spouse Benefits 'became irrevocable and could not be changed [even by a] waiver of the designated beneficiary.'" *See also, Rivers v. Central and South West Corporation, et al.,* 186 F.3d 681, 683–84 (5th Cir.1999) (finding SSB irrevocably vested in plan participant's current wife "on the date of his retirement and [former wife] is forever barred from acquiring an interest in [his] pension plan").

In the present case, at the time Husband retired in 1989, the SSB vested in Wife I because the two were still married. Although Husband had a ninety-day window prior to his retirement in which he could have, with Wife I's written consent, removed her as a beneficiary of the SSB, this was not accomplished. After Husband retired, even if Wife I had

agreed to waive her SSB, she could not have done so under ERISA. Wife I's purported waiver in the divorce agreement was ineffective to waive the SSB because ERISA does not allow a beneficiary to waive SSB after a plan participant retires.

Moreover, even if Husband had divorced Wife I prior to retiring, or had never married Wife I to begin with, Wife II's position with respect to the survivor benefits would be no different: Wife II would not be entitled to any SSB because she married Husband after he retired. ERISA provides SSB "may not be paid to a spouse who marries a participant *after* the participant's retirement." *Hopkins*, 105 F.3d at 157 (citing 29 U.S.C.A. § 1055(f)) (emphasis added).

Therefore, because Wife I's rights vested upon Husband's retirement, those benefits belonged to her, not Husband. Under the terms of the property settlement agreement, each party was permitted to retain any pension plan in "his or her possession." Whether intended or not, the SSB were as much in Wife I's "possession" (control) as they could be. We agree with Wife I that even under the terms of the parties' property settlement agreement, she was entitled to retain her SSB because they were in her "possession" at the time of the execution and approval by the court of the property settlement agreement. We therefore hold that *Hopkins*, not *Altobelli* is dispositive of the issues in this appeal.

It does seem untoward that Husband should not be able to have a component of his qualified joint and survivor annuity awarded to Wife II, rather than a woman from whom he was divorced and did not have a relationship with for years before his death. However, in keeping with our reading of federal law, there is no other resolution possible.

## CONCLUSION

For the reasons stated herein, the trial court's decision is **AFFIRMED.**

SHORT and WILLIAMS, JJ., concur.