22101

INTERNATIONAL HARVESTER COMPANY, Appellant, v. Robert C. WASSON, Chairman and Charles N. Plowden and John H. Lafitte, Jr., Constituting the Members of the South Carolina Tax Commission, Respondents.

(316 S. E. (2d) 378)

Supreme Court

*Frank A. Graham, Jr.,* Columbia, *for appellant.*

*Atty. Gen, T. Travis Medlock, Retired Atty. Gen. Daniel R. McLeod, Deputy Atty. Gen. Joe L. Allen, Jr.,* and *Staff Atty, Ray N. Stevens,* Columbia, *for respondents.*

Heard Feb. 21, 1984.

Decided May 11, 1984.

LEWIS, Chief Justice:

This appeal involves the constitutional validity, under the interstate commerce clause and equal protection requirements of the Federal Constitution, of this State's assessment of a sales tax upon the sale of forty-eight (48) truck-tractors by plaintiff International Harvester Company, a Delaware Corporation, to Senn Trucking Company, a South Carolina

Corporation. Plaintiff contends that (1) the imposition of the sales tax upon the present transaction places an impermissible burden on interstate commerce, and (2) deprives it of equal protection of the laws since Section 12-35-550(20), South Carolina Code, 1976, specifically exempts the sales of railroad cars, locomotives and parts thereof from the tax but does not exempt the sale of motor vehicles.

The trial judge held that the assessment of the tax in this case was not a burden on interstate commerce and did not deprive plaintiff of its right to equal protection. We agree. Our recent decision in *Senn Trucking Company v. Wasson*, 22032, filed January 19, 1984 requires affirmance of the equal protection issue. That opinion so clearly disposes of this question as to require no further comment here.

The following from the order of the Trial Judge disposes of the interstate commerce issue:

> The plaintiff, International Harvester Company, is incorporated under the laws of Delaware but maintains its principal place of business in the State of Illinois. The plaintiff's business includes the production of trucks at its Fort Wayne, Indiana, facility. The plaintiff sells its trucks both on a wholesale and retail basis. Part of its selling operations is carried on by branches such as its regional facility in Charlotte, North Carolina, known as Carolina Fleet Sales. The sale activity of the Charlotte branch includes solicitation of business in South Carolina by means of a sales representative having his residence in Mauldin, South Carolina.
>
> The plaintiff also has local retail outlets where it sells trucks and performs repair and service work. In South Carolina during the audit period, there were retail outlets located in Greenville and Charleston and the plaintiff holds retail licenses issued by South Carolina.
>
> Senn Trucking Company is a South Carolina Corporation engaged in business as a common carrier. Between August 20, 1977 and July 6, 1979, the plaintiff sold forty-eight (48) motor trucks to Senn. The Bill of Lading for each truck shows that the plaintiff delivered the trucks to Senn in Greenville, South Carolina. Delivery was made at International Harvester's place of business in Greenville where several of the trucks were serviced and finally delivered to Senn. Senn then transported the trucks to its terminal at Silverstreet, South Carolina.

Section 12-35-510, South Carolina Code of Laws, 1976, as amended, imposes the sales tax "upon every person engaged or continuing within this State in the business of selling at retail any tangible personal property . . . ." Thus to be subject to the tax, the plaintiff must be in business of making retail sales in South Carolina. Section 12-35-20 defines business as "all activities engaged in . . . with the object of gain . . ." There is little question that plaintiff is in business in South Carolina for a profit since it maintains outlets in Greenville and Charleston as well as soliciting business in this State by a resident salesman from Carolina Fleet Sales of Charlotte, North Carolina.

The second criteria for the sales tax is that the sales be retail sales. Section 12-35-110 says that retail sales are any sales except those defined as wholesale sales. Section 12-35-170 says a wholesale sale does not include a sale to be a user or consumer. Since Senn Trucking Company is the user and consumer of the trucks, the sale to it is not a wholesale sale and this is a retail sale.

The final criteria for being a taxable sale is that the sale must be a sale within South Carolina. Section 12-35-100 defines a sale as any transfer of tangible personal property for a consideration. Thus, if the transfer of the trucks, i.e., delivery, took place in South Carolina, the sale would take place in this State. The trucks were manufactured in Indiana and delivered to the purchaser in Greenville, South Carolina, by a common carrier hired and paid by the plaintiff. Further, the Bill of Lading for each truck shows that delivery was made to the purchaser in Greenville, South Carolina. Finally, the President of Senn Trucking, the purchaser, signed an affidavit to the effect that the trucks were delivered in South Carolina. Based on the foregoing factual support, it is concluded that the sales took place in South Carolina.

Since it is established that the plaintiff is in business in South Carolina that the sales of trucks to Senn Trucking were retail sales and the retail sales were made in South Carolina, it follows that the plaintiff is subject to South Carolina's sales tax unless an exemption applies. The plaintiff argues that there is an exemption provided under Section 12-35-550(1) which exempts the gross proceeds of the sale of tangible personal property which the State is prohibited from taxing

under the United States Constitution. The plaintiff argues that Article 1, Section 8 of the United States Constitution, commonly known as the Commerce Clause, prohibits the taxing of the sales here in question.

Article 1, Section 8, which gives Congress the power to regulate commerce, is not violated in the instant case. The rule is that a state may tax local activity even if such is related to interstate commerce so long as the local activity is sufficiently separate from the out-of-state aspects. *Memphis Natural Gas Co. v. Stone*, 335 U.S. 80, 68 S. Ct. 1475, 92 L. Ed. 1832. In the instant case, the local activities upon which a tax is levied are the sales of the trucks. Sale is defined by Section 12-35-100 as any transfer of tangible personal property, i.e., delivery. Since delivery took place in South Carolina, the local activity is subject to the tax and there is no violation of interstate commerce.

Given a local activity subject to tax, interstate commerce is not violated so long as there is no discrimination against interstate commerce, i.e., local businesses are not favored (see *General Motors Corp. v. Washington*, 377 U.S. 436, 84 S. Ct. 1564, 12 L. Ed. (2d) 430, and the activity taxed does not lend itself to repeated taxes in other states (see *Memphis Natural Gas, supra.*). In the instant case, there is no discrimination since all sales are subject to tax whether made by local businesses or made by businesses outside the state so long as delivery is within South Carolina. Thus, there is no discrimination since both local and foreign businesses are treated alike. Likewise there is no danger of multiple taxation by several states since the sales tax is levied upon the sale evidenced by delivery in South Carolina. Since delivery can only occur in one state, here South Carolina, there is no multiple taxation.

Finally, as to interstate commerce, International Harvester argues that under *Maryland v. Louisiana*, 451 U.S. 725, 101 S. Ct. 2114, 68 L. Ed. (2d) 576, the tax must have a substantial nexus with the state, be fairly apportioned, not discriminate against interstate commerce and be fairly related to services provided by the state. The fallacy of applying this argument to the sales tax in question here is that such an argument is dependent upon finding the sales tax is a tax on interstate commerce. In the instant case, there is no tax on

interstate commerce at all but rather a tax on an intrastate activity, i.e., a sale within South Carolina.

Assuming for sake of argument that the four-prong test stated above is applicable, the sales tax in the instant case satisfies each of the tests. The sales tax is imposed upon the privilege of "engaging or continuing within this State in the business of selling at retail". International Harvester has a retail sales license for South Carolina and operates facilities in Greenville and Charleston as well as soliciting for business in South Carolina by a resident sales agent. Such facts show that International Harvester's activity of making sales in South Carolina has a substantial nexus with this State and thus the first test is satisfied.

The tax in question also satisfies the second test of being fairly apportioned. This test is aimed at preventing multiple taxation. There is no evidence presented that any other state imposed a sales tax on the sale of the trucks involved in this litigation. In fact, undisputed testimony was given that no other state had imposed any sales tax and thus there is no risk of multiple taxation. The tax in question is fairly apportioned since the actual sale by means of delivery took place in South Carolina and since delivery can only take place in South Carolina, no other state can impose a sales tax.

The third test of discrimination against interstate commerce is also satisfied. The sales tax of four percent is imposed on all transactions without regard to whether the seller is local or outside of the state. Likewise, the four percent tax applies to all sales made within this State without regard to the intended use either within or without South Carolina. Unlike the use tax situation in *Maryland v. Louisiana, supra,* where in-state users were given credits against the use tax and this derived an advantage over other users, the instant sales tax does not favor sales by local sellers but rather treats all sellers equally.

Finally the tax is fairly related to the services provided by South Carolina. The fourth test requires that the measure of the tax is to be reasonably related to the extent of the contracts of International Harvester since its activity in South Carolina may properly be made to bear "a just share of state tax burden". *Western Live Stock v. Bureau of Revenue,* 303 U.S. at 250, 580 S. Ct. 546, 82 L. Ed. 823. In the instant case, the

operating incidence of the tax is on the privilege of selling goods at retail and the tax is measured by the gross proceeds of the sales. Because the tax is measured at a percentage (4%) of the gross proceeds of sales, the tax is in "proper proportion" to International Harvester's sales activity within South Carolina and, therefore, to their "consequent enjoyment of the opportunities and protections which the state has afforded" in connection with those activities. *See General Motors Corp. v. Washington, supra,* 377 U.S. at 441, 84 S. Ct. at 1568. When a tax is assessed in proportion to a taxpayer's activities or presence in a state, the taxpayer is shouldering its fair share of supporting the state's provision of "police and fire protection, the benefit of a trained work force and the advantages of a civilized society". *Exxon Corp. v. Wisconsin Dept. of Revenue,* 447 U.S. 207, 100 S. Ct. 2109, 65 L. Ed. (2d) 66. Thus the tax is fairly related to services provided by South Carolina.

Judgment affirmed.

LITTLEJOHN, NESS, GREGORY and HARWELL, JJ., concur.