705 S.E.2d 28

**TRAVELSCAPE, LLC, Appellant,**

v.

**SOUTH CAROLINA DEPARTMENT OF REVENUE, Respondent.**

No. 26913.

Supreme Court of South Carolina.

Heard May 13, 2010.

Decided Jan. 18, 2011.

90

92

James P. Karen, David Cowling, and Lily H. Shanks, all of Jones Day, of Dallas, TX, John M. Allan, of Jones Day, of Atlanta, GA, Stephen P. Groves, Sr., Thomas S. Tisdale, Jr. and Burnet R. Maybank, III, all of Nexsen Pruet, LLC, all of Charleston, for Appellant.

Milton Gary Kimpson, Andrew L. Richardson, Jr., Caroline Raines, and Ronald W. Urban, all of S.C. Department of Revenue, of Columbia, for Respondents.

Frances Isaac Cantwell, of Regan and Cantwell, LLC, of Charleston, and Robert E. Lyon, Jr., of Columbia, for Amicus Curiae SC Association of Counties.

Justice HEARN.

The Administrative Law Court ("ALC") found Travelscape, LLC was required to remit sales tax on the gross proceeds it received from providing hotel reservations in South Carolina. Additionally, the ALC found the sales tax did not violate the Dormant Commerce Clause. We agree with the ALC's findings and affirm.

## FACTUAL/PROCEDURAL BACKGROUND

Travelscape is an online travel company offering hotel reservations at locations across the country through the website Expedia.com ("Expedia").[1] Although Travelscape neither owns nor operates hotels, it enters into contracts with hotels whereby the hotels agree to accept a discounted rate from those offered to the general public ("net rate") for reservations made on Expedia.[2] Travelscape then adds a facilitation fee, service fee, and tax recovery charge to the net rate of the room. The facilitation and service fees are retained by Travelscape as compensation for its role in the transaction. The tax recovery charge, which is based on the net room rate, corresponds with the sales tax owed by the hotel. The sum of the net room rate, facilitation fee, service fee, and tax recovery charge is the actual price listed for the room on Expedia.

If a customer books a hotel reservation on Expedia, Travelscape charges the customer's credit card for the transaction. Unless the customer purchases additional guests services while staying at the hotel (*i.e.* room service, movie rentals, or valet parking), the customer pays no money to the hotel for her stay. After the customer checks out of the hotel, the hotel invoices Travelscape for the net room rate as well as sales tax owed by the hotel. Travelscape then remits the net room rate

1. Travelscape is a single member Nevada limited liability company. Expedia, Inc., a Washington corporation, is Travelscape's single member.

2. During the audit period, Travelscape entered into contracts with 354 hotels in South Carolina.

and tax recovery charge to the hotel. Travelscape retains the facilitation and service fees and does not pay sales tax on these fees.

The Department of Revenue ("Department") conducted an audit of Travelscape's records for the period of July 1, 2001 through June 30, 2006. The Department determined Travelscape was required to pay a sales tax of seven percent on the gross proceeds received from furnishing hotel accommodations in South Carolina.[3] Thereafter, the Department issued Travelscape an assessment and penalty in the amount of $6,376,454.71. Travelscape filed a timely request for a contested case hearing before the ALC in accordance with section 12-60-460 of the South Carolina Code (Supp.2009). Following a two-day hearing, the ALC issued a final order, finding Travelscape was required to pay the tax but not required to pay the penalties imposed by the Department.[4] This appeal followed.

## STANDARD OF REVIEW

This Court's standard of review is set forth in section 1-23-610(B) of the South Carolina Code (Supp.2009). That section provides:

> The review of the administrative law judge's order must be confined to the record. The court may not substitute its judgment for the judgment of the administrative law judge as to the weight of the evidence on questions of fact. The court ... may affirm the decision or remand the case for further proceedings; or it may reverse or modify the decision if the substantive rights of the petitioner have been prejudiced because the finding, conclusion, or decision is:
>
> (a) in violation of constitutional or statutory provisions;
>
> (b) in excess of the statutory authority of the agency;
>
> (c) made upon unlawful procedure;
>
> (d) affected by other error of law;

---

3. The issue of whether Travelscape is entitled to a credit from the taxes it collected and remitted to the hotels based on the net room rate is not before the Court by stipulation of the parties.

4. The Department has not appealed from the ruling regarding the payment of penalties.

(e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Id.*

## LAW/ANALYSIS

### I. APPLICABILITY OF ACCOMMODATIONS TAX

We begin our analysis in this case by focusing on the statutory scheme of section 12–36–920. Both parties agree, and the ALC found, that section 12–36–920 is divided into two relevant parts. Section 12–36–920(A) sets forth what is subject to the tax—"the gross proceeds derived from the rental or charges for any rooms ... or sleeping accommodations *furnished* to transients by any hotel ... or any place in which rooms, lodgings, or sleeping accommodations are *furnished* to transients for a consideration." (emphasis added). In turn, section 12–36–920(E) establishes who is subject to the tax— "every person engaged ... in *the business of furnishing accommodations* to transients for consideration." (emphasis added). Therefore, the task before us is to harmonize these two provisions and determine whether the service and facilitation fees are gross proceeds derived from the furnishing of sleeping accommodations and, if so, whether Travelscape is engaged in the business of furnishing these accommodations.

### A. Service and Facilitation Fees

██ Travelscape contends it is not required to pay sales tax on the service and facilitation fees it retains because such fees are "derived from" the services it provides, not from the rental charge for the hotel room. We disagree.

Section 12–36–920(A) of the South Carolina Code (Supp. 2009) imposes a seven percent sales tax on *"the gross proceeds derived from the rental or charges for any rooms ...* furnished to transients by any ... place in which rooms, lodgings, or sleeping accommodations are furnished to transients for consideration." (emphasis added). In the definition section of the South Carolina Sales and Use Tax Act, the legislature defined the term "gross proceeds of sale" and "any similar term" as "the value proceeding or accruing from the sale,

lease, or *rental of tangible personal property* ... without any deduction for ... the cost of materials, labor, or service." S.C.Code Ann. § 12–36–90(1)(b)(ii) (emphasis added).[5]

 "The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature." *Hardee v. McDowell,* 381 S.C. 445, 453, 673 S.E.2d 813, 817 (2009) (internal quotation omitted). Where the statute's language is plain, unambiguous, and conveys a clear, definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning. *Gay v. Ariail,* 381 S.C. 341, 345, 673 S.E.2d 418, 420 (2009).

 In our view, the fees charged by Travelscape for its services are subject to sales tax under the plain language of section 12–36–920(A) as gross proceeds. Section 12–36–920(A) imposes the tax on the *"gross proceeds* derived from the rental or charges for any room." (emphasis added). In section 12–36–90(1)(b), the legislature specifically stated the definition of "gross proceeds of sales" applies to any similar term as well. S.C.Code Ann. § 12–36–90(1)(b). We find the term gross proceeds as used in section 12–36–920(A) is a similar term to gross proceeds of sales. Therefore, the definition of gross proceeds of sales also applies to gross proceeds.[6] Accordingly, "gross proceeds" under section 12–36–920(A) includes the value obtained from the rental of accommodations *without deduction for the cost of services.* S.C.Code Ann. § 12–36–90(1)(b)(ii). Because the cost of services is specifically included in the definition of gross proceeds of sales, we find the fees retained by Travelscape for its services are taxable as gross proceeds.

---

**5.** Section 12–36–10 of the South Carolina Code (2000) states "[t]he words, terms, and phrases defined in this article have the meaning provided, except when the context clearly indicates a different meaning."

**6.** While the definition of "gross proceeds of sales" applies to "tangible personal property," we find the legislature's use of "gross proceeds" specifically in connection with the "rental or charges for any rooms, campground spaces, lodgings, or sleeping accommodations" is sufficient to apply the general "gross proceeds of sales" definition to the subject real property.

## B. Application to Travelscape

Section 12–36–920(E) imposes the Accommodations Tax "on every person engaged or continuing within this State in the business of furnishing accommodations to transients for consideration." Travelscape argues it is not subject to the Accommodations Tax because it: (A) is not engaged in the business of furnishing accommodations, and (B) does not conduct business within the State.

### 1. *Furnishing Accommodations*

Travelscape first asserts it is not engaged in the business of furnishing accommodations because it neither owns nor operates hotels. According to Travelscape, the ordinary and commonplace understanding of the term "furnish," as well as the manner that the term is used throughout section 12–36–920, demonstrates that the term carries with it the connotation of physically providing sleeping accommodations to customers. Because Travelscape is only an intermediary providing hotel reservations to transients and does not physically provide sleeping accommodations, Travelscape contends it is not subject to the Accommodations Tax. We disagree.

"A statute as a whole must receive practical, reasonable, and fair interpretation consonant with the purpose, design, and policy of lawmakers." *Sloan v. S.C. Bd. of Physical Therapy Examiners,* 370 S.C. 452, 468, 636 S.E.2d 598, 606 (2006). When faced with an undefined statutory term, the Court must interpret the term in accordance with its usual and customary meaning. *Branch v. City of Myrtle Beach,* 340 S.C. 405, 409–10, 532 S.E.2d 289, 292 (2000). Courts should consider not merely the language of the particular clause being construed, but the undefined word and its meaning in conjunction with the whole purpose of the statute and the policy of the law. *Whitner v. State,* 328 S.C. 1, 6, 492 S.E.2d 777, 779 (1997).

The United States District Court for the District of South Carolina considered a similar argument in *City of Charleston, S.C. v. Hotels.com,* 520 F.Supp.2d 757 (D.S.C.2007). In that case, the city of Charleston and town of Mount Pleasant passed nearly identical local accommodations tax ordinances imposing a sales tax on the gross proceeds derived from the

rental of any accommodations within municipal boundaries. *Id.* at 762. Charleston and Mount Pleasant alleged several internet travel companies violated the ordinances by only remitting taxes based on the net rate negotiated with hotels, instead of the marked-up price actually charged to customers on their websites. *Id.* at 762–63. The legislature enabled municipalities to pass a "local accommodations tax" by enacting section 6–1–520(A) of the South Carolina Code (2004). In section 6–1–510(1), the legislature defined "local accommodations tax" as "a tax on the gross proceeds derived from the rental or charges for accommodations furnished to transients as provided in Section 12–36–920(A) and which is imposed on every person engaged ... *in the business of furnishing accommodations* to transients for consideration." (emphasis added). Like Travelscape in this case, the internet travel companies argued Charleston and Mount Pleasant lacked the power to impose the tax on them because they were not engaged in the business of furnishing accommodations. *Hotels.com*, 520 F.Supp.2d at 767.

The district court rejected this argument. In doing so, the district court found the ordinary meaning of the term "furnish" was "to supply what is needed for an activity or purpose." *Id.* at 768 (citing *Webster's II New College Dictionary* 454 (2d ed.1999)). The district court further noted "[t]he core purpose of the Ordinances is to levy a tax on the amount of money visitors to the municipality spend on their hotel rooms or other accommodations." *Id.* at 768. With this purpose in mind and with reference to the common understanding of the term furnish, the district court noted its inquiry was directed not at determining who was physically providing sleeping accommodations, but rather on who was accepting money in exchange for supplying the room. *Id.* Accordingly, the district court denied the travel companies' motion to dismiss. *Id.*

■ As a general rule, "identical words and phrases within the same statute should normally be given the same meaning." *Powerex Corp. v. Reliant Energy Serv., Inc.*, 551 U.S. 224, 232, 127 S.Ct. 2411, 2417, 168 L.Ed.2d 112 (2007). The South Carolina Court of Appeals has long recognized a similar rule. *See e.g. Busby v. State Farm Mut. Auto. Ins. Co.*, 280 S.C. 330, 333, 312 S.E.2d 716, 718 (Ct.App.1984) (citing *Pampanga Sugar Mills v. Trinidad*, 279 U.S. 211, 218, 49 S.Ct. 308, 310,

73 L.Ed. 665 (1929)) ("Where the same word is used more than once in a statute it is presumed to have the same meaning throughout unless a different meaning is necessary to avoid an absurd result."). This Court has held that words in a statute must be construed in context, and their meaning may be ascertained by reference to words associated with them in the statute. *Eagle Container Co., LLC v. Cty. of Newberry,* 379 S.C. 564, 571, 666 S.E.2d 892, 895 (2008).

Travelscape is correct in pointing out that "furnish" as used in subsection (A) invokes the connotation of physically providing sleeping accommodations to customers. Indeed, the American Heritage Dictionary defines "furnish" as "[t]o equip with what is needed" and to "supply" or "give." *Am. Heritage Dictionary* 540 (2d College Ed.1982). Relying on *Powerex,* Travelscape argues the term "furnish" as used in subsection (E) should be read consonant with its use in subsection (A). We agree. As used in subsection (E), "furnish" does mean to physically provide sleeping accommodations. However, Travelscape's argument ignores the antecedent language in (E) that it applies to all persons "engaged . . . in the business of" furnishing accommodations. "Business" includes "all activities, with the object of gain, profit, benefit, or advantage, either direct or indirect." S.C.Code Ann. § 12–36–20 (2000). Accordingly, we find the context of "furnish" as it appears in subsection (E) demonstrates that it encompasses the activities of entities such as Travelscape who, whether directly or indirectly, provide hotel reservations to transients for consideration. Contrary to the dissent's view, we do not read the term "furnish" differently in subsection (E) than we do in (A). Instead, we interpret subsection (E) in such a manner as to give effect to all the language contained therein—particularly that the entity be "engaged . . . in the business of" furnishing accommodations—rather than focusing on the term "furnish" in isolation. While Travelscape does not physically provide accommodations, it is in the business of doing so.

The legislative purpose of section 12–36–920 supports such a finding. *Whitner,* 328 S.C. at 6, 492 S.E.2d at 779. In *Hotels.com,* the district court found the purpose of the ordinances, which were based on section 12–36–920, was to "levy a tax on the amount of money visitors to the municipality spend on their hotel rooms or other accommodations." 520

F.Supp.2d at 768. In our view, the legislative purpose of section 12–36–920 is identical. The application of the tax to "every person engaged ... in the business of furnishing accommodations" also reveals that the legislature intended to levy the tax not merely on those physically providing sleeping accommodations, but on those entities who were accepting money in exchange for supplying hotel rooms. Additionally, section 12–36–920(C) specifically dispels the notion that the tax is imposed only on those entities physically providing the sleeping accommodations. Subsection (C) establishes that the tax is also assessed against real estate agents, brokers, corporations, and listing services. Therefore, we find the legislative purpose of subsection (E) and the context of the term "furnish" in that subsection demonstrates that Travelscape is subject to the Accommodations Tax because it is "engaged ... in the business of furnishing accommodations to transients for consideration." S.C.Code Ann. § 12–36–920(E).

## 2. *Within The State*

 Next, Travelscape argues it is not subject to the Accommodations Tax because it is not engaged in business in South Carolina. Travelscape contends the phrase "within the State" modifies "every person" in subsection (E) and thus imposes the tax only on entities having a physical presence in the State. Because it does not have a physical presence in South Carolina, Travelscape asserts it is not required to remit the tax. Travelscape also contends the absence of a use tax in South Carolina and the lack of a provision dealing with out-of-state business transactions in section 12–36–920 demonstrates that the legislature did not intend to impose the Accommodations Tax on Travelscape. We disagree.

"The taxes imposed by this section are imposed on every person engaged or continuing *within this State* in the business of furnishing accommodations to transients for consideration." S.C.Code Ann. § 12–36–920(E) (emphasis added).

We find the language and sentence structure of subsection (E) reveals that "within this State" modifies the preceding terms "engaged or continuing." As such, the phrase "within this State" imposes the sales tax on those entities engaged or continuing in the business of furnishing accommodations in South Carolina, without regard to whether the entities main-

tain offices or otherwise reside in this State. In *International Harvester Co. v. Wasson*, this Court interpreted identical statutory language in the same manner. 281 S.C. 458, 316 S.E.2d 378 (1984). The statute in *Wasson* imposed a sales tax "upon every person engaged or continuing *within this State* in the business of selling at retail any tangible personal property." *Id.* at 460, 316 S.E.2d at 379 (citing S.C.Code Ann. § 12–35–510 (1976)) (emphasis added). We determined the phrase "within this State" as found in section 12–35–510 required the "plaintiff [to be] in [the] business of making retail sales in South Carolina." *Wasson*, 281 S.C. at 460, 316 S.E.2d at 379. We find "within this State" as used in section 12–36–920(E) has the same meaning. In accordance with this understanding of "within the State," Travelscape will be responsible for remitting the sales tax in question if it was engaged in the business of furnishing accommodations in South Carolina.

Clearly, Travelscape was engaged in the business of furnishing accommodations in South Carolina during the audit period, seeing as it: (1) entered into contracts with hundreds of hotels in South Carolina in which the hotels agreed to accept a discounted price, or net rate, for reservations made on Expedia; (2) sent employees to South Carolina for the purpose of negotiating such agreements; and (3) booked reservations in exchange for consideration at hotels located in this State. Accordingly, we find the plain language of section 12–36–920(E) imposes the sales tax on Travelscape because it was engaged in the business of furnishing accommodations in South Carolina.

## II. DORMANT COMMERCE CLAUSE

Travelscape argues the imposition of the sales tax on it is an unconstitutional violation of the Dormant Commerce Clause because the tax fails to satisfy the four-part test announced by the United States Supreme Court in *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977). We disagree.

The Commerce Clause of the United States Constitution provides that Congress has the power to regulate commerce among the several states. U.S. Const. art. I, § 8, cl. 3. However, "the Commerce Clause is more than an

affirmative grant of power; it has a negative sweep as well." *Quill Corp. v. North Dakota*, 504 U.S. 298, 309, 112 S.Ct. 1904, 1911, 119 L.Ed.2d 91 (1992). Even in the absence of Congressional regulation, the negative implications of the Commerce Clause, often referred to as the Dormant Commerce Clause, prohibit state action that unduly burdens interstate commerce. *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 287, 117 S.Ct. 811, 818, 136 L.Ed.2d 761 (1997). A state tax withstands a Dormant Commerce Clause challenge so long as the tax (1) " 'is applied to an activity with a substantial nexus with the taxing State, (2) is fairly apportioned, (3) does not discriminate against interstate commerce, and (4) is fairly related to the services provided by the State.' " *Quill*, 504 U.S. at 311, 112 S.Ct. at 1912 (quoting *Complete Auto*, 430 U.S. at 279, 97 S.Ct. at 1079).

## A. *Substantial Nexus*

 Travelscape argues it does not have a substantial nexus with the State because its role in facilitating hotel reservations occurs exclusively outside of South Carolina. We disagree.

 Commerce Clause nexus, for sales and use tax purposes, requires some physical presence within the taxing jurisdiction. *Quill*, 504 U.S. at 317, 112 S.Ct. at 1916. In *National Bellas Hess, Inc. v. Department of Revenue*, the Supreme Court held a state may not impose a use tax upon a seller whose only connection with customers in the state is by common carrier or mail. 386 U.S. 753, 758, 87 S.Ct. 1389, 1392, 18 L.Ed.2d 505 (1967).[7] "[T]he crucial factor governing nexus is whether the activities performed in this state on behalf of the taxpayer are significantly associated with the taxpayer's ability to establish and maintain a market in this state for its sales." *Tyler Pipe Indus. v. Wash. State Dep't of Revenue*, 483 U.S. 232, 250, 107 S.Ct. 2810, 2821, 97 L.Ed.2d

---

7. In *Quill*, the Supreme Court overruled *Bellas Hess* for the proposition that the Due Process Clause requires the taxpayer to be physically present in the jurisdiction in order for the tax to apply. 504 U.S. at 308, 112 S.Ct. at 1911. However, *Quill* unequivocally affirmed the physical presence requirement in evaluating whether the nexus requirement has been met for Commerce Clause purposes. *Id.* at 317, 112 S.Ct. at 1916.

199 (1987) (quoting with approval *Tyler Pipe Indus. v. Wash. State Dep't of Revenue,* 105 Wash.2d 318, 715 P.2d 123 (Wash. 1986)).

In *Tyler Pipe,* the State of Washington imposed a sales tax on a corporation that manufactured products outside of Washington for in-state sale. 483 U.S. at 249, 107 S.Ct. at 2821. The Supreme Court found the corporation had a physical presence in Washington even though it manufactured all of its products outside the State, maintained no offices in the State, owned no property within the State, and had no employees residing in the State. 483 U.S. at 249, 107 S.Ct. at 2821. The Supreme Court reached this conclusion in light of the services provided by non-employee in-state sales representatives. *Id.* The sales representatives provided services that were essential to the corporation's ability to make sales in Washington, including calling customers, soliciting orders, maintaining contacts, and providing information. *Id.* at 250, 107 S.Ct. at 2821. Based on these facts, the Supreme Court found the corporation had a physical presence in the state for tax purposes. *Id.*

In a similar case, the Supreme Court found a Georgia corporation was subject to a use tax imposed by the State of Florida in spite of the fact the corporation had no offices or employees in Florida. *Scripto, Inc. v. Carson,* 362 U.S. 207, 213, 80 S.Ct. 619, 622, 4 L.Ed.2d 660 (1960). There, the corporation used independent contractors to sell its products in Florida. *Id.* at 211, 80 S.Ct. at 621–22. Although these "salesmen" were not technically employees of the corporation, the Supreme Court found their activities within Florida on behalf of the corporation were sufficient to satisfy the physical presence requirement. *Id.* The Court further found that the corporation's disclaimer of an agency relationship with the independent contractors was insignificant for constitutional purposes. *Id.* at 211, 80 S.Ct. at 622.

Travelscape primarily relies on *McLeod v. J.E. Dilworth Co.* in support of its contention that it does not have a substantial nexus with South Carolina. 322 U.S. 327, 64 S.Ct. 1023, 88 L.Ed. 1304 (1944). In *McLeod,* the State of Arkansas sought to impose a tax on the sale of machinery and mill supplies by two Tennessee corporations to residents of Arkansas. *Id.* at 328, 64 S.Ct. at 1024. The Tennessee corporations did not

maintain a sales office, branch plant, or any other place of business in Arkansas. *Id.* at 328, 64 S.Ct. at 1024. Orders for the goods came to Tennessee through solicitation in Arkansas by traveling salesmen domiciled in Tennessee or by mail or telephone. *Id.* The goods sold to the Arkansas residents were shipped from Tennessee, and title to the goods passed upon delivery to a carrier located in Tennessee. *Id.* Under these facts, the Supreme Court found the Dormant Commerce Clause prohibited Arkansas from imposing the tax on the Tennessee corporations. *Id.* at 331, 64 S.Ct. at 1026. In our view, *McLeod* is distinguishable from *Tyler Pipe, Scripto,* and the facts of this case because in *McLeod,* the Tennessee corporations relied very little on the services of Arkansas to facilitate the sale of its goods to Arkansas residents. Therefore, we believe Travelscape's reliance on *McLeod* is misplaced.

We find Travelscape has a sufficient physical presence in South Carolina for purposes of satisfying the nexus requirement of the Dormant Commerce Clause. Initially, contrary to Travelscape's assertions, all of the services it provides in furnishing hotel accommodations in South Carolina do not occur entirely in other jurisdictions. According to stipulation of the parties, "[e]mployees and representatives of [Travelscape] visit South Carolina in order to enable [Travelscape] to establish and maintain hotel relationships and obtain the discounted net room rate for rooms booked using the www. expedia.com website." This fact standing alone may be enough to satisfy the physical presence requirement. However, Travelscape's physical presence in South Carolina extends beyond business visits of employees. Travelscape enters into contracts with South Carolina hotels for the right to offer reservations at various locations across the state. The hotels agree to accept a discounted rate for reservations made on Expedia. In turn, when a reservation is booked on Expedia, the customer actually stays at a hotel within the state. Like the corporations in *Tyler Pipe* and *Scripto,* the services provided by the hotels are significantly associated with Travelscape's ability to establish and maintain a market in South Carolina for its sales.[8] *Tyler Pipe,* 483 U.S. at 250, 107 S.Ct.

---

8. Travelscape is a "seller" of hotel rooms as defined by statute. *See* S.C.Code Ann. § 12–36–70(1)(c) ("[S]eller includes every person ...

at 2821. Without the hotels actually providing the sleeping accommodations to the customer, Travelscape would be entirely unable to conduct business within the state. For Commerce Clause nexus purposes, it simply does not matter that Travelscape specifically disclaims any agency relationship with the hotels in the contracts it enters into. *Scripto,* 362 U.S. at 211, 80 S.Ct. at 622. Accordingly, we find Travelscape has a physical presence within South Carolina.

## B. *Fairly Apportioned*

 In regards to this issue, Travelscape merely recycles the argument made above. Again, Travelscape contends because its services are performed entirely outside the state, its activities are not subject to the Accommodations Tax. We disagree.

 The purpose behind the apportionment requirement is to ensure that each state taxes only its fair share of an interstate transaction. *Goldberg v. Sweet,* 488 U.S. 252, 260–61, 109 S.Ct. 582, 588, 102 L.Ed.2d 607 (1989). A tax is fairly apportioned if it is internally and externally consistent. *Id.* at 261, 109 S.Ct. at 589. "To be internally consistent, a tax must be structured so that if every State were to impose an identical tax, no multiple taxation would result." *Id.* "The external consistency test asks whether the State has taxed only that portion of the revenues from the interstate activity which reasonably reflects the in-state component of the activity being taxed." *Id.* at 262, 109 S.Ct. at 589. The Supreme Court has consistently approved the taxation of sales without any division of the tax base among different states, finding such taxes properly measurable by the gross charge for the purchase regardless of any activity occurring outside the taxing jurisdiction that might have preceded the sale or might occur in the future. *Okla. Tax Comm'n v. Jefferson Lines, Inc.,* 514 U.S. 175, 186, 115 S.Ct. 1331, 1339, 131 L.Ed.2d 261 (1995). "[A]n internally consistent, conventional sales tax has long been held to be externally consistent as well." *Id.* at 188, 115 S.Ct. at 1340.

---

renting, leasing, or otherwise furnishing tangible personal property for a consideration. . . . ").

Here, the internal and external consistency tests are met. The Accommodations Tax satisfies the internal consistency because it imposes a tax on the gross proceeds derived from furnishing accommodations in South Carolina. If every State imposed a similar tax on accommodations provided within its boundaries, no multiple taxation would occur because the same accommodations cannot be furnished in two different states at one time. Having found the tax to be internally consistent, the tax is externally consistent as well under *Jefferson Lines.*

C. *Discrimination Against Interstate Commerce & Fairly Related To Services Provided By The State*

▆▆▆▆▆ Travelscape argues the Accommodations Tax discriminates against interstate commerce because the Department has not imposed the tax on travel agents located in South Carolina.[9] In addition, Travelscape asserts the tax is not fairly related to the services provided by the State because as an out-of-state company it receives no services from the State such as police and fire protection. We find these issues are not preserved for appellate review.

▆▆▆▆ Initially, we take this opportunity to clarify our law regarding the power of an ALC to determine the constitutionality of a statute.[10] It is well settled in this State that ALCs, as part of the executive branch, are without power to pass on the constitutional validity of a statute or regulation. *Video Gaming Consultants, Inc. v. S.C. Dep't of Revenue,* 342 S.C. 34, 38, 535 S.E.2d 642, 644 (2000). In *Video Gaming Consultants,* we said those challenges present an exception to our preservation rules and should be raised for the first time on appeal to the circuit court. *Id.* at 39, 535 S.E.2d at 345.

---

9. In a similar argument, Travelscape asserts the State violated its rights under the Equal Protection Clauses of the United States Constitution and the South Carolina Constitution by failing to impose the tax on non-Internet travel related companies engaged in the same business as Travelscape. This argument was never ruled on by the ALC. Accordingly, we find this issue is not preserved for appellate review.

10. Because the resolution of this issue concerns the ALC's subject matter jurisdiction with respect to Travelscape's Dormant Commerce Clause challenge, we raise it *sua sponte. See S.C. Tax Comm'n v. S.C. Tax Bd. of Review,* 278 S.C. 556, 559–60, 299 S.E.2d 489, 491–92 (1983) (stating ALCs are without jurisdiction to hear constitutional challenges).

However, the legislature has since amended the process for appeals from the ALC, providing for a direct appeal to the court of appeals instead of the circuit court. S.C.Code Ann. § 1–23–610(A) (Supp.2009). This procedural change results in a conundrum for litigants bringing "as-applied" constitutional challenges to a statute or regulation: they must first bring an inherently factual issue before a tribunal generally not suited to make factual determinations. While we have not addressed this issue, the court of appeals, in a case arising before the change in the governing statutes, said, "While it is true that AL[C]s cannot rule on a facial challenge to the constitutionality of a regulation or a statute, AL[C]s can rule on whether a law as applied violates constitutional rights." *Dorman v. Dep't of Health & Envtl. Control,* 350 S.C. 159, 171, 565 S.E.2d 119, 126 (Ct.App.2002) (citing *Ward v. State,* 343 S.C. 14, 18, 538 S.E.2d 245, 247 (2000)).

 We find the principle enunciated in *Dorman* and *Ward* to be sound and hold that ALCs are empowered to hear as applied challenges to statutes and regulations. ALCs are better suited for making the factual determinations necessary for an as applied challenge, and finding a statute or regulation unconstitutional as applied to a specific party does not affect the facial validity of that provision. We wish to reiterate that our decision today does not affect the ALC's inability to decide facial challenges to a statute or regulation; those are legal questions that are properly raised for the first time on appeal or in a declaratory judgment action before the circuit court. Thus, the ALC in the case before us had jurisdiction to determine whether section 12–36–920 violates the Dormant Commerce Clause as applied to Travelscape.[11] Accordingly, all of our preservation and exhaustion of remedies rules apply before the ALC and other administrative tribunals with respect to an as applied challenge.

The ALC did not rule on arguments relating to the final two elements of the *Complete Auto* test in its final order. *See*

---

11. While Travelscape does not specifically state it is making an "as applied" challenge to this statute, it is clear from the briefs it does not argue section 12–36–920 is facially unconstitutional. *See Williams v. Pryor,* 240 F.3d 944, 953 (11th Cir.2001) ("Unless the statute is unconstitutional in all its applications, an as-applied challenge must be used to attack its constitutionality.").

*Lucas v. Rawl Family Ltd. P'ship,* 359 S.C. 505, 510–11, 598 S.E.2d 712, 715 (2004) (stating generally, an issue must be raised to and ruled upon by the trial court in order to be preserved for appellate review). As such, it was incumbent upon Travelscape to make a Rule 59(e) motion. *See Wilder Corp. v. Wilke,* 330 S.C. 71, 77, 497 S.E.2d 731, 734 (1998) (noting that proper use of a Rule 59(e) motion is to preserve issues raised to but not ruled upon by the trial court); *Walsh v. Woods,* 371 S.C. 319, 325, 638 S.E.2d 85, 88 (Ct.App.2006). Because Travelscape failed to do so, we find these issues are not preserved for appellate review. *See State v. Powers,* 331 S.C. 37, 42, 501 S.E.2d 116, 118 (1998) (finding Constitutional arguments are no exception to the error preservation rule).

## CONCLUSION

We find section 12–36–920 imposes a sales tax on the gross proceeds received by Travelscape in exchange for furnishing hotel accommodations in South Carolina. Additionally, we find the imposition of the sales tax on Travelscape does not violate the Dormant Commerce Clause. Accordingly, the decision of the ALC is:

**AFFIRMED.**

TOAL, C.J., KITTREDGE, J., and Acting Justice JAMES E. MOORE, concur. PLEICONES, J., dissenting in a separate opinion.

Justice PLEICONES.

I respectfully dissent. I am not persuaded that the legislature intended S.C.Code Ann. § 12–36–920 to include the separate fee charged by intermediaries, such as Travelscape, in the seven percent sales tax "imposed on the gross proceeds derived from the rental or charges for any rooms ... or sleeping accommodations furnished to transients by any hotel...." Accordingly, I would reverse the administrative law court.

Travelscape is an international company which operates primarily as an internet facilitator of hotel reservations. Travelscape does not provide accommodations to the customer. Instead, Travelscape negotiates favorable rates with hotel chains. A Travelscape customer receives the benefit of the

reduced rate and pays a fee to Travelscape for handling the transaction, all of which is spelled out in the agreement between Travelscape and the customer.

For hotel reservations in South Carolina, a seven percent sales tax is collected on that portion of proceeds derived from the rental of the hotel room. The question before us is whether the legislature intended the statutory seven percent sales tax to reach the separate fee charged by Travelscape for the service it provides. I do not believe the statute unambiguously answers this question. Because it is not clear as to whether Travelscape is subject to § 12–36–920, we must resort to the rules of statutory construction.

S.C.Code Ann. § 12–36–920 (Supp.2009) provides in relevant part:

(A) A sales tax equal to seven percent is imposed on the gross proceeds derived from the rental or charges for any rooms, campground spaces, lodgings, or sleeping accommodations furnished to transients by any hotel, inn, tourist court, tourist camp, motel, campground, residence, or any place in which rooms, lodgings, or sleeping accommodations are furnished to transients for consideration. . . .

. . .

(E) The taxes imposed by this section are imposed on every person engaged or continuing within this State in the business of furnishing accommodations to transients for consideration.

I begin with the word "furnish" as it is used in § 12–36–920. Section 12–36–920(A) describes what fees are subject to the tax, while § 12–36–920(E) describes who is subject to the tax. As the majority acknowledges, the word "furnished" as used in subsection (A) connotes physically providing accommodations to customers, which Travelscape does not do. Thus, in order to find Travelscape to be in the business of "furnishing accommodations," the majority imposes a different meaning of the word "furnish" in subsection (E). Under the majority's view, "furnish" in subsection (A) is used narrowly and "invokes the connotation of physically providing sleeping accommodations to customers," while in subsection (E), the phrase "business of furnishing" includes not only those who furnish but

112

also those who provide a service to "furnishers" and "transients."

"A standard principle of statutory construction provides that identical words and phrases within the same statute should normally be given the same meaning." *Powerex Corp. v. Reliant Energy Services, Inc.*, 551 U.S. 224, 232, 127 S.Ct. 2411, 168 L.Ed.2d 112 (2007). Where the same word is used more than once in a statute, it is presumed to have the same meaning throughout unless a different meaning is necessary to avoid an absurd result. *See Busby v. State Farm Mut. Auto. Ins. Co.*, 280 S.C. 330, 333, 312 S.E.2d 716, 718 (Ct.App.1984). In my opinion, giving the term "furnish" a different meaning in subsection (A) than is given in subsection (E), is in contravention to the rule of statutory construction that the same terms or words in a statute should be given the same meaning.[12]

I see no reason to deviate from the general rule of statutory construction that the same words within the same statute should be given the same meaning. I believe this is especially so in light of the additional and well-recognized rule of statutory construction, that in the enforcement of tax statutes, the taxpayer should receive the benefit in cases of doubt. *South Carolina Nat'l Bank v. South Carolina Tax Comm'n*, 297 S.C. 279, 281, 376 S.E.2d 512, 513 (1989). The majority's construction of the tax statute violates this rule.

Applying the language of § 12–36–920 and utilizing our rules of statutory construction, I am forced to conclude that Travelscape is not subject to the tax. To conclude otherwise would require a clearer expression of legislative intent. I would reverse.

12. In my view, the majority's reliance on *Eagle Container Co., LLC v. County of Newberry*, 379 S.C. 564, 666 S.E.2d 892 (2008) is misplaced. Although we stated in *Eagle Container Co.* that "words in a statute must be construed in context, and the meaning of particular terms in a statute may be ascertained by reference to words associated with them in the statute," we were not concerned with construing the same word within the ordinance that was at issue. *Id.* at 571, 666 S.E.2d at 895–96 (citations omitted). Rather, the court had to determine whether the phrase "uses permitted" was equivalent to the term of art "permitted use."