# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Amazon Services, LLC, Petitioner,

v.

South Carolina Department of Revenue, Respondent.

Appellate Case No. 2024-000625

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from the Administrative Law Court
Ralph King Anderson, III

---

Opinion No. 28319
Heard May 14, 2025 – Filed March 18, 2026

---

## AFFIRMED

---

Robert N. Hochman and Neil H. Conrad, Chicago, Illinois, and Carter G. Phillips, Washington D.C., all of Sidley Austin LLP; John C. Von Lehe, Jr. and Bryson Moore Geer, Charleston, and C. Mitchell Brown, Columbia, all of Nelson Mullins Riley & Scarborough, LLP, for Petitioner.

Chad Nicholas Johnston and Tracey Colton Green, of Burr & Forman LLP, Columbia; Lauren Acquaviva, of Viva Law Firm, Charleston; John William Roberts, of JJE Capital Holdings LLC, Columbia; Jason Phillip Luther, of

South Carolina Department of Revenue, all for Respondent.

Jennifer Butler Routh, of McDermott Will & Emery, LLP, of Washington, DC, as Amici Curiae for Tax Law Professor Hayes R. Holderness and National Retail Federation. Joshua Madison Tyler Felder, of Greenville and Kay Miller Hobart, of Raleigh, NC, both of Parker Poe Adams & Bernstein, LLP, as Amici Curiae for Council on State Taxation. Stephen M. Cox, of Rock Hill and Erik R. Zimmerman, of Chapel Hill, NC, both of Robinson, Bradshaw & Hinson, P.A., as Amici Curiae for The Chamber of Commerce of the United States of America, Business Roundtable, NetChoice, The South Carolina Chamber of Commerce, and the Greater Columbia Chamber of Commerce. Samantha Katherina Trencs, of Washington, DC, Nikki E. Dobay, of Sacramento, CA, and Katy Stone, of San Francisco, CA, all of Greenberg Traurig, LLP, as Amici Curiae for the Institute for Professionals in Taxation. Robert T. Bockman and Clinton G. Wallace, of The Law Center, of Columbia, as Amici Curiae for Tax Law Professors Tessa R. Davis and Clinton G. Wallace.

---

**JUSTICE FEW:** This appeal arises from an administrative action filed by Amazon Services, LLC challenging the South Carolina Department of Revenue's assessment of $12,490,502.15 in unpaid sales taxes, penalties, and interest for the first three months of 2016. The Department made the assessment based on its claim that Amazon Services was obligated to collect and remit sales taxes for retail sales to South Carolina customers for products sold by third-party merchants on Amazon.com. The administrative law court (ALC) found the Department correctly determined Amazon Services owed the taxes and lawfully imposed the penalties and interest. The court of appeals affirmed. *Amazon Servs., LLC v. S.C. Dep't of Revenue*, 442 S.C. 313, 898 S.E.2d 194 (Ct. App. 2024). We affirm the court of appeals.

## I.  Background

Amazon Services, LLC—a subsidiary of Amazon.com, Inc.—operates the online marketplace website Amazon.com.  There are three categories of sellers on Amazon.com: (1) Amazon Services sells Amazon Prime memberships, (2) Amazon affiliates list their products for sale, and (3) third-party merchants—not affiliated with Amazon Services—list products they own for sale.  Sales taxes for products sold on Amazon.com by Amazon Services and its affiliates are not at issue in this case because Amazon Services began collecting taxes on those sales and remitting the taxes to the Department in 2016.  The only issue in this case is whether Amazon Services was obligated under law in 2016 to collect and remit taxes owed for sales of products by third-party merchants.

When Amazon Services began operating Amazon.com over twenty years ago, states were not permitted under federal law to impose taxes on sales to their residents unless the seller had some physical presence in the state.  *See Quill Corp. v. N. Dakota*, 504 U.S. 298, 317, 112 S. Ct. 1904, 1916, 119 L. Ed. 2d 91, 110 (1992) (holding the dormant commerce clause requires a business have a physical presence in a state to be subject to the state's sales tax laws), *overruled by S. Dakota v. Wayfair, Inc.*, 585 U.S. 162, 188, 138 S. Ct. 2080, 2099, 201 L. Ed. 2d 403, 426 (2018).  At that time, Amazon Services had no physical presence in South Carolina.  For this reason, Amazon Services was not obligated to collect or remit taxes on any sales made on Amazon.com to our residents.

In 2011, our General Assembly enacted Act 32, which was designed to recruit online sellers like Amazon Services to build and operate sales and distribution facilities in South Carolina.  Act No. 32, 2011 S.C. Acts 109 (effective June 8, 2011) (codified at S.C. Code Ann. § 12-36-2691 (2014)).  Act 32 provided a temporary sales tax exemption for businesses and business affiliates that built facilities in the state that satisfied the requirements outlined in section 3 of the Act.  The same year, Amazon Services' affiliate Amazon Fulfilment Services, LLC built a fulfillment center in South Carolina and satisfied the requirements of section 12-36-2691.  Amazon Services and its affiliates qualified for the sales tax exemption and thus paid no sales tax for any sales made in the state from 2011 to the end of 2015.

Beginning in January of 2016, Amazon Services collected and remitted taxes on products it sold and its affiliates sold on Amazon.com.  However, it did not collect or remit any taxes on products sold by third-party merchants to residents of this State.  The record before us indicates there were approximately 2.5 million active third-party merchants on Amazon.com at that time, and approximately 50% of the sales

transactions that occurred on Amazon.com were made by third-party merchants. After an audit, the Department determined Amazon Services was required by law to collect and remit sales tax on these third-party transactions and issued Amazon Services an assessment of $12,490,502.15 in unpaid sales taxes, penalties, and interest.

Amazon Services requested a contested case hearing before the ALC. Following a three-day hearing, the ALC issued an order affirming the Department's assessment. Amazon Services appealed the ALC's order and the court of appeals affirmed. *Amazon Servs.*, 442 S.C. at 320, 340, 898 S.E.2d at 197, 208. We granted Amazon Services' petition for a writ of certiorari to review the court of appeals' decision.

## II.     Subsection 12-36-910(A)

There is no question sales taxes were due on third-party merchants' sales made on Amazon.com involving residents of this State. The only question is whether Amazon Services was required to collect and remit them. The answer to the question is found in the South Carolina Sales and Use Tax Act, S.C. Code Ann. §§ 12-36-5 to -2695 (2014 & Supp. 2025), particularly in the text of subsection 12-36-910(A). Subsection 12-36-910(A) provides, "A sales tax, equal to five percent of the gross proceeds of sales, is imposed upon every person engaged or continuing within this State in the business of selling tangible personal property at retail."

We focus on the language "engaged . . . in the business of selling." The word "engaged" is not defined in the South Carolina Sales and Use Tax Act. Therefore, we "interpret the term in accord with its usual and customary meaning." *Branch v. City of Myrtle Beach*, 340 S.C. 405, 409-10, 532 S.E.2d 289, 292 (2000). Merriam-Webster defines "engaged" as "involved in activity" and "greatly interested." *Engaged*, WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1988); *see also Engage*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "engage" as "[t]o employ or involve oneself"). Section 12-36-20 defines "[b]usiness" to include "all activities, with the object of gain, profit, benefit, or advantage, either direct or indirect. Subactivities of a business which produce marketable commodities, used or consumed in the business, are taxable transactions." "Selling" is the present participle of the verb "sell," which means "to offer for sale." *Sell*, WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1988). Section 12-36-100 defines the word "[s]ale" in relevant part as "any transfer, exchange, or barter, conditional or otherwise, of tangible personal property for a consideration." Thus, a person is "engaged . . . in the business of selling" when they are integrally involved in a "[s]ale" to obtain "gain, profit, benefit, or advantage, either direct or indirect."

Amazon Services' relationship with third-party merchants is governed in comprehensive detail by a "Business Solutions Agreement" all third-party merchants are required to sign. The Business Solutions Agreement in effect in 2016 tightly controlled every third-party merchant transaction. For example:

- Amazon Services regulated a third-party merchant's ability to set the price of a product listed on Amazon.com;[1]
- Amazon Services established criteria for how third-party merchants listed products on Amazon.com;
- Amazon Services controlled notification of third-party merchant products purchased on Amazon.com;
- Amazon Services notified Amazon Payments, Inc. when to charge a customer for a particular transaction through the customer's chosen payment method;
- Amazon Services notified customers of order shipment;
- Amazon Services dictated how third-party merchants communicated with customers;
- Amazon Services handled returns involving third-party merchant products; and
- Amazon Services dispersed funds from these transactions to third-party merchants *after* retaining any applicable fees.

Amazon Services purposefully crafted a business model that made the involvement of Amazon Services integral to every third-party transaction. Thus, we hold Amazon Services was "engaged . . . in the business of selling."

The parties, ALC, and court of appeals reference the statutory definition of "seller" found in subsection 12-36-70(1)(A). Amazon Services argues that because it is not a "seller" of any of these products, it is not subject to any obligation to collect or remit sales taxes under subsection 12-36-910(A). As the word "seller" does not appear in the subsection, we disagree. The question posed by subsection 12-36-910(A) is not whether Amazon Services was a "seller," but whether Amazon Services was "engaged . . . in the business of selling." The ALC correctly determined it was.

---

[1] If a third-party merchant offered a product elsewhere, the price listed on Amazon.com had to be lowest price or the same as the lowest price where the product was offered elsewhere, ensuring Amazon.com was competitive with other purchasing platforms.

Amazon Services also argues that focusing on whether a person is "engaged . . . in the business of selling" when determining tax liability under subsection 12-36-910(A) "contains no principled stopping point." Under Amazon Services' theory, "payment processors, credit card companies, banks, delivery companies, advertisers, and more" are all businesses that receive profits for providing services "from the sale of property owned by others" and, therefore, would be required to remit sales tax under subsection 12-36-910(A). We disagree.

As discussed above, Amazon Services structured its business model in a way that provided it with comprehensive control over third-party transactions. This control was so significant that a third-party transaction could not occur on Amazon.com without actions taken by Amazon Services. In contrast to Amazon Services' integral role in each transaction, other companies such as payment processors, credit card companies, banks, delivery companies, and advertisers provide services that are incidental to the transaction. These companies may aid in the facilitation of a sale, but there is nothing requiring a specific company's involvement for a particular sale to occur. The phrase "engaged . . . in the business of selling" both encompasses Amazon Services' business model and differentiates Amazon Services from other incidental service providers. Thus, the "stopping point" is found in the plain language of subsection 12-36-910(A) and is illustrated in its application to a potential taxpayer's business model.

Because subsection 12-36-910(A) is unambiguous, we simply apply the text as written, and we do not need the rules of statutory construction. *See Centex Int'l, Inc. v. S.C. Dep't of Revenue*, 406 S.C. 132, 139, 750 S.E.2d 65, 69 (2013) ("When a statute's terms are clear and unambiguous on their face, there is no room for statutory construction and a court must apply the statute according to its literal meaning." (quoting *Sloan v. Hardee*, 371 S.C. 495, 498, 640 S.E.2d 457, 459 (2007))). However, Amazon Services attempts to avoid this straightforward application of an unambiguous statute by relying on "the settled principle that any substantial doubt in the application of a tax statute must be resolved in favor of the taxpayer." *Alltel Commc'ns, Inc. v. S.C. Dep't of Revenue*, 399 S.C. 313, 318, 731 S.E.2d 869, 872 (2012); *see also Cooper River Bridge v. S.C. Tax Comm'n*, 182 S.C. 72, 76, 188 S.E. 508, 509-10 (1936) ("[W]here the language relied upon to bring a particular person within a tax law is ambiguous or is reasonably susceptible of an interpretation that will exclude such person, then the person will be excluded.").

Amazon Services' "reasonable" interpretation focuses on the statutory definition of "Sale." It does not dispute that third-party transactions were sales subject to subsection 12-36-910(A). Rather, Amazon Services argues it did not conduct a

"sale" because it did not receive consideration "for" transferring tangible personal property and, therefore, was not "engaged . . . in the business of selling." However, the plain language of subsection 12-36-910(A) does not require the taxpayer to receive consideration "for" the sale subject to the statute. Again, it is the phrase "engaged . . . in the business of selling" and the statutory definitions of "[b]usiness" and "[s]ale" together that determine who is required to remit these sales taxes. Because Amazon Services' interpretation of the statute relies on words the statute does not contain—sale and seller—we find its interpretation is not "reasonable" under *Alltel*.

Based on the unambiguous language of subsection 12-36-910(A) as applied to Amazon Services, we hold Amazon Services was "engaged . . . in the business of selling" and was required to remit sales tax on third-party transactions.

### III. *Travelscape*

Amazon Services also argues the court of appeals' reference to *Travelscape, LLC v. S.C. Dep't of Revenue*, 391 S.C. 89, 705 S.E.2d 28 (2011), is incorrect because (1) *Travelscape* does not indicate subsection 12-36-910(A) can be interpreted "broadly" as "the words 'broad' or 'broadly' do not appear in *Travelscape*" and (2) the court of appeals' discussion is inconsistent with "the settled principle that any substantial doubt in the application of a tax statute must be resolved in favor of the taxpayer," *Alltel*, 399 S.C. at 318, 731 S.E.2d at 872. *See Amazon Servs.*, 442 S.C. at 331-32, 898 S.E.2d at 203-04 (court of appeals' discussion of *Travelscape*). We agree that *Travelscape* does not indicate subsection 12-36-910(A) may be interpreted broadly. To the extent the court of appeals read *Travelscape* to require a broad interpretation of tax statutes, the court of appeals erred. We clarify that our holding in *Travelscape* does not indicate the South Carolina Sales and Use Tax Act may be interpreted broadly. Rather, courts must engage in a thorough analysis of the Act based on ordinary principles of statutory interpretation. *See Multi-Cinema, Ltd. v. S.C. Tax Comm'n*, 292 S.C. 411, 413, 357 S.E.2d 6, 7 (1987) ("The usual rules of statutory construction apply to the interpretation of tax statutes."). Our opinion in *Travelscape* speaks for itself and we find it unnecessary to address it further in this case. *See Books-A-Million, Inc. v. S.C. Dep't of Revenue*, 437 S.C. 640, 652, 880 S.E.2d 476, 482 (2022) (James, J., dissenting) ("Our holding in *Travelscape* was narrow and tailored to the facts of that case . . . .").

## IV. Due Process

In 2019, the General Assembly adopted Act 21, amending the South Carolina Sales and Use Tax Act "to further inform Marketplace facilitators," such as Amazon Services, "of their requirements" to remit sales tax on online sales involving third-party merchant products. Act No. 21, 2019 S.C. Acts 101 (effective Apr. 26, 2019) (codified at S.C. Code Ann. § 12-36-71 (Supp. 2025)). Amazon Services now argues that requiring it to remit sales tax for third-party transactions violates the South Carolina Constitution's and the United States Constitution's due process requirement of "fair notice" because it "effectively subjects Amazon Services to [Act 21] retroactively." We disagree.

"A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253, 132 S. Ct. 2307, 2317, 183 L. Ed. 2d 234, 245 (2012). Here, the Department applied the South Carolina Sales and Use Tax Act as written in 2016 to Amazon Services' business model when it issued its determination. The determination was issued a year before the General Assembly's legislative debate and subsequent enactment of Act 21. Thus, the Department could not have applied Act 21 retroactively because the Act did not exist when the determination was issued. We hold there was no due process violation.

## V. Conclusion

For the reasons explained above, we affirm the court of appeals.

**AFFIRMED.**

**JAMES and HILL, JJ., concur. KITTREDGE, C.J., dissenting in a separate opinion in which Acting Justice Courtney Clyburn Pope, concurs.**

**CHIEF JUSTICE KITTREDGE:** With great respect for the majority, I dissent. Both parties present good faith arguments as to the proper interpretation of section 12-36-910(A) of the South Carolina Code (2014). I find both parties' arguments to be reasonable interpretations of the statute.[2] As a result, I believe our precedent requires us to rule in favor of Amazon. *See, e.g., Alltel Commc'ns, Inc. v. S.C. Dep't of Rev.*, 399 S.C. 313, 318, 731 S.E.2d 869, 872 (2012) ("[A]ny substantial doubt in the application of a tax statute must be resolved in favor of the taxpayer." (citing *Cooper River Bridge, Inc. v. S.C. Tax Comm'n*, 182 S.C. 72, 76, 188 S.E. 508, 509–10 (1936) ("Where the language relied upon to bring a particular person within a tax law is ambiguous or is reasonably susceptible of an interpretation that will exclude such person, then the person will be excluded, any substantial doubt being resolved in his favor." (cleaned up)))); *S.C. Nat. Bank v. S.C. Tax Comm'n*, 297 S.C. 279, 281, 376 S.E.2d 512, 513 (1989) ("In the enforcement of tax statutes, the taxpayer should receive the benefit in cases of doubt.").

I additionally note the majority glosses over the court of appeals' erroneous interpretation of *Travelscape*[3] and its resulting decision to read the South Carolina Sales and Use Tax Act[4] (the Act) "broadly." While acknowledging the error, the majority does not analyze how that error impacted the court of appeals' flawed interpretation of section 12-36-910(A). To me, the court of appeals' improper

---

[2] More specifically, the majority correctly sets forth the Department of Revenue's interpretation at length in its opinion, and I agree this is one reasonable interpretation of section 12-36-910(A). However, I likewise find merit in Amazon Services's (Amazon) position: Amazon did not receive "consideration" or "proceeds" from buyers for third-party sales but, instead, merely served as a conduit for transferring money from buyers to third-party sellers. Of course, the third-party sellers did pay Amazon, but those payments allegedly were not consideration for particular sales but, rather, fees that encompassed Amazon's provision of various services to the third-party sellers, including advertising. Because there is some doubt as to whether Amazon received consideration for any particular third-party sale—and, thus, whether Amazon was "engaged" in the "business of selling tangible personal property" within South Carolina—I believe both parties' readings of the statute are reasonable.

[3] *Travelscape L.L.C. v. S.C. Dep't of Rev.*, 391 S.C. 89, 705 S.E.2d 28 (2011).

[4] S.C. Code Ann. §§ 12-36-5 to -2695 (2014 & Supp. 2025).

interpretation of *Travelscape* is inextricably linked with its erroneous conclusion that the statute is unambiguous.

I therefore respectfully dissent.

**Acting Justice Courtney Clyburn Pope, concurs.**